Argued and submitted June 17, affirmed September 25, reconsideration denied November 8, petition for review denied December 17, 1985 (300 Or 451)

# STATE OF OREGON,
*Respondent,*

*v.*

# GEORGE CLARENCE DUBOIS,
*Appellant.*

(72622; CA A34807)

706 P2d 588

Steven L. Price, Hillsboro, argued the cause and filed the brief for appellant.

Jeffrey Bennett, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

WARREN, J.

### WARREN, J.

Defendant appeals his conviction in a stipulated facts trial for driving under the influence of intoxicants. ORS 487.540. He assigns error to the trial court's denial of his motion to suppress evidence gained as a result of what he contends was an illegal stop.

Officer McHarry was driving his patrol car northbound on S.W. 170th in Beaverton at 2:34 a.m. on October 8, 1984. He saw a motorcycle driving south on the same street, heading toward him. Suddenly, the motorcycle pulled off the road, its headlight went off and the operator began to push it. The officer was concerned that there was a problem with the motorcycle and decided to inquire and offer assistance. He turned his car around to head south, pulled over behind defendant's motorcycle and then turned on his car's overhead lights as a safety precaution, as Washington County police policy requires when a patrol car stops on a road. The trial court found that, at the area where the officer pulled off the road, the road had a three-foot shoulder and the officer's patrol car was partially on the road. Defendant does not claim that the findings of fact are not supported by substantial evidence, and we must accept them as conclusive. *Ball v. Gladden*, 250 Or 485, 443 P2d 621 (1968).

When the officer began to talk with defendant to determine if there was a problem with the motorcycle, he detected an odor of alcohol on defendant's breath and requested that he perform field sobriety tests. An Intoxilyzer test revealed that defendant had a blood alcohol content of 0.15 percent.

The trial court found that, at the time the officer pulled over to talk with defendant, he did not have a reasonable suspicion that defendant had committed a crime. This finding is not disputed. The issue is whether the officer's acts amounted to a "stop" within the meaning of ORS 131.605(5) and 131.615.[1] If the officer stopped defendant without a

---

[1] ORS 131.605(5) provides:

"A 'stop' is a temporary restraint of a person's liberty by a peace officer lawfully present in any place."

reasonable suspicion of criminal activity, the stop was illegal and any evidence obtained must be suppressed. *State v. Walp,* 65 Or App 781, 672 P2d 374 (1983). If there was no stop, as the trial court held, the evidence was admissible.

The test to determine whether an encounter between an officer and a citizen is a stop within the meaning of ORS 131.615 is:

> "* * * whether the police, through physical force or a show of authority, restrained the liberty of the person encountered so that a reasonable person would not feel free to refuse to cooperate or leave the scene * * *." *State v. Spenst,* 62 Or App 755, 758, 662 P2d 5, *rev den* 295 Or 447 (1983).

In *Spenst,* the officer followed the defendant's vehicle closely for about one-half mile before the defendant quickly moved his vehicle to the side of the road. The officer pulled his vehicle alongside the defendant's and walked over to talk to him. We held that the officer did not use any physical force or show of authority that would cause a reasonable person to believe he must stop, and therefore there was no stop.

*State v. Walp, supra,* presented a factual situation which was similar to *Spenst* but different in one crucial respect. Officers closely followed the defendant's vehicle for some distance. The defendant turned onto another road and pulled onto the shoulder and stopped after traveling another 100 yards. The officers turned on their overhead lights and then pulled up behind the defendant's car and approached it. We held that the officers' use of the emergency lights before pulling up behind the defendant's car was sufficient to distinguish the case from *Spenst* and that, because a reasonable person in those circumstances would not feel free to drive away, there was a stop.

---

ORS 131.615 provides:

"(1) A peace officer who reasonably suspects that a person has committed a crime may stop the person and, after informing the person that he is a peace officer, make a reasonable inquiry.

"(2) The detention and inquiry shall be conducted in the vicinity of the stop and for no longer than a reasonable time.

"(3) The inquiry shall be considered reasonable only if limited to the immediate circumstances that aroused the officer's suspicion."

■ Defendant contends that, because the officer turned on his overhead lights after pulling up behind his motorcycle, this case is controlled by *Walp* and there was a stop. Although the use of the overhead lights in *Walp* was sufficient to distinguish it from *Spenst,* an officer's use of overhead lights alone does not necessarily cause an encounter to be a stop. In deciding whether an encounter is a stop, we must look at the totality of the circumstances. *State v. Hanna,* 52 Or App 503, 508, 628 P2d 1246, *rev den* 291 Or 662 (1981).

■ We conclude that, in this case, McHarry did not stop defendant. Defendant voluntarily stopped his motorcycle without responding to any action on the part of the officer, who approached from the opposite direction. The officer pulled over behind defendant to determine if he needed assistance. Turning on the overhead lights had nothing to do with the officer's encounter with defendant. There was no stop within the meaning of ORS 131.605(5) and 131.615. The trial court did not err in denying defendant's motion.

Affirmed.