Argued and submitted May 28, affirmed July 16, petition for review denied
September 23, 1997 (326 Or 58)

## STATE OF OREGON,
*Respondent,*

*v.*

## UCHECHI DAREISTIUS LOUD,
*Appellant.*

## (C9504-33148; CA A90497)

942 P2d 814

Peter Gartlan, Deputy Public Defender, argued the cause for appellant. With him on the briefs was Sally L. Avera, Public Defender.

Pilar C. French, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Virginia L. Linder, Solicitor General.

Before Riggs, Presiding Judge, and Landau and Leeson, Judges.

LEESON, J.

**LEESON, J.**

A jury convicted defendant of delivery of a controlled substance and possession of a controlled substance. On appeal, he assigns error to the trial court's denial of his motion to suppress and to the imposition of an upward departure sentence. We view the evidence in the light most favorable to the state, *State v. Tucker*, 315 Or 321, 325, 845 P2d 904 (1993), and affirm.

During the night of November 23 and early morning of November 24, 1994, two police officers conducted surveillance of a three-block area in north Portland that is known for drug trafficking. During a two-hour period, the officers watched a man pace back and forth on a street corner near a known drug house and attempt to flag down passing vehicles. The officers associated the man's behavior with drug sales. At about 1:45 a.m., defendant drove into the intersection, turned into the wrong lane to park next to the curb where the man was pacing, turned off the headlights of his car and honked the horn. The man went to defendant's car and leaned into the driver's side window. After about a minute, the man stepped away from the car, and defendant pulled away from the curb at a high rate of speed, committing several traffic infractions. The officers followed defendant and, when they caught up to his car, turned on their emergency lights and a spotlight to initiate a traffic stop. Defendant drove slowly for approximately four blocks before stopping. During that time, the officers noticed a passenger in the front seat of defendant's car. The officers saw defendant rise up in his seat and reach over to the passenger, as if he were passing something to her. When defendant finally stopped, the officers approached his car, and one officer asked defendant to step out of it. When defendant did so, the other officer recognized him as a person who had been associated with crack houses for the past two years and as someone that the officer had arrested previously for a drug offense. Defendant and the passenger consented to searches of their persons. The officers found $436 cash and a pager on defendant, and 27.5 grams of crack cocaine in a pocket of the passenger's jacket. Defendant disclaimed knowing anything about the cocaine. The officers

also found a cellular phone in the car. The trial court denied defendant's motion to suppress the evidence of the search.

Defendant argues that the trial court erred when it denied his motion to suppress evidence of the search. He argues that the officers did not have reasonable suspicion to conduct a criminal stop under ORS 131.615. In the alternative, defendant argues that, although the officers validly stopped him pursuant to a traffic stop under ORS 810.410, they exceeded their authority under that statute, because their request for his consent to search was unrelated to the traffic infractions. According to defendant, the facts of this case cannot be distinguished from those in *State v. Aguilar,* 139 Or App 175, 912 P2d 379, *rev den* 323 Or 265 (1996). The state responds that the officers had reasonable suspicion to initiate the stop under ORS 131.165 and seeks to distinguish this case from *State v. Moya,* 97 Or App 375, 775 P2d 927 (1989). Alternatively, the state argues that the officers had reasonable suspicion to expand the scope of their inquiry following the stop for traffic infractions and that *Aguilar* is distinguishable.

■■    In holding that the officers had authority to stop defendant under ORS 131.615, the trial court relied on the events that occurred before the officers initiated a stop by turning on the emergency lights *and* the events that occurred after they initiated the stop, which included defendant driving slowly for four blocks before stopping and their observation of his furtive gestures:

> "*At this point*, the officers had reasonable suspicion that [defendant] had been involved in some sort of drug activity * * *. And they had reason to suspect that fruits, or implements, or instrumentalities of that criminal act had been passed to the passenger * * *."

(Emphasis supplied.) A stop occurs when an officer, by show of authority, "restrain[s] the liberty of the person encountered so that a reasonable person would not feel free to refuse to cooperate or leave the scene." *State v. Walp,* 65 Or App 781, 784, 672 P2d 374 (1983). In this case, the officers displayed their authority by turning on the police emergency lights, thereby directing defendant to stop. *See Walp,* 65 Or App at 784 (use of emergency lights is a sufficient show of authority);

*cf. State v. Dubois,* 75 Or App 394, 398, 706 P2d 588, *rev den* 300 Or 451 (1985) (use of emergency lights does not necessarily cause an encounter to be a stop where the defendant first stopped voluntarily). The stop in this case was justified under ORS 131.615 only if the officers reasonably believed that defendant had committed a crime *before* they turned on their car's emergency lights. In concluding that the officers reasonably believed that defendant had committed a crime for purposes of a stop under ORS 131.615, the trial court impermissibly considered events that occurred after the officers initiated the stop. We are not persuaded that the events the officers observed before the stop—defendant's brief visit with a suspicious but unidentified person in an area known for drug sales—gave rise to reasonable suspicion that defendant had committed a crime. *See Moya,* 97 Or App at 378 (officers lacked reasonable suspicion to stop motorist who appeared to hide something from police while parked in front of "heroin hotel"). Consequently, we turn to whether the officers permissibly expanded their inquiry pursuant to the stop for the traffic infractions.

■    There is no question that, under ORS 810.410, the officers had authority to stop defendant for the traffic infractions he committed in their presence. After they initiated the stop, defendant slowed down but did not stop for four blocks and made furtive gestures suggesting that he was passing something to the passenger in the front seat of his car. Under the totality of the circumstances, which includes the events before and after they initiated the traffic stop, the officers reasonably suspected that defendant had committed a crime and they were entitled to ask him for consent to search his person. *See State v. Dominguez-Martinez,* 321 Or 206, 212, 895 P2d 306 (1995) (an officer may investigate only the traffic infraction unless the state can point to some basis other than the infraction to broaden the scope of the investigation).

Our holding in *Aguilar* is not to the contrary. In that case, an officer witnessed what he believed to be a drug transaction between a motorist and a pedestrian in front of a known drug house. The officer believed that the pedestrian was the owner of the drug house. Five weeks later, the same officer saw the defendant get into a car parked in front of the drug house and drive away. After the defendant drove away,

the officer saw the same pedestrian he had seen five weeks earlier jog into the drug house from the area where the defendant's car had been parked. The officer saw no contact between the defendant and the house, and no contact between the defendant and the pedestrian. The officer stopped the defendant for a traffic infraction and to investigate the possibility that a drug transaction had occurred before the traffic infraction. We held that, in the light of *Dominguez-Martinez*, the officer did not have reasonable suspicion to expand the traffic stop to inquire about the drug transaction. *Aguilar*, 139 Or App at 184. In this case, by contrast, the officers observed contact between defendant and the person whose activities they had observed for two hours and whom they believed to be engaged in drug sales. Additionally, they observed defendant's suspicious behavior after they initiated the stop.

■ We disagree with defendant that the officers were required to observe a hand-to-hand transaction between the person they suspected was selling drugs and defendant in order to have reasonable suspicion to expand the inquiry following the traffic stop. An officer need only form a belief "that is objectively reasonable under the totality of the circumstances" that a person has committed a drug offense. *State v. Ehly,* 317 Or 66, 79, 854 P2d 421 (1993). Officers may draw reasonable inferences from the circumstances, based on their experience. *Id.*

■ Defendant also assigns error to the trial court's imposition of a durational departure sentence of 68 months. The trial court identified four reasons for the upward departure: the offense was more serious than usual, defendant's persistent involvement in similar criminal conduct, defendant committed the current offenses while on parole, and defendant is not amenable to supervision. A sentencing court has discretion to impose a departure sentence whenever it finds substantial and compelling reasons to do so. *State v. Watkins,* 146 Or App 338, 341, 932 P2d 107, *rev den* 325 Or 438 (1997). We review departure sentences to determine if the reasons given by the trial court for departure are sufficiently compelling, are supported by evidence and serve the purposes of the guidelines. ORS 138.222(3); *State v. Wilson,* 111 Or App 147, 151, 826 P2d 1010 (1992). Because in this case the trial court

did not state that each reason would independently justify a departure sentence, we address all four reasons. *Wilson,* 111 Or App at 152; *cf. State v. Williams,* 133 Or App 191, 194-95, 891 P2d 3, *rev den* 321 Or 512 (1995) (it is a waste of judicial resources to address all reasons if record states that one aggravating factor was sufficient).

Defendant's arguments regarding the first departure factor—that the offense was more serious than usual—were not preserved below.[1] Consequently, we do not address them. *State v. Brown,* 132 Or App 443, 447, 888 P2d 1071, *rev den* 321 Or 137 (1995). Defendant contends that the second reason for departure—persistent involvement in similar criminal conduct[2]—is inappropriate because only one of his four prior convictions involved drugs. In his view, that conviction, added to the drug-related activities underlying his other convictions, does not constitute persistent involvement. To determine whether defendant has demonstrated persistent involvement in similar criminal conduct, the court may consider all prior offenses, whether or not they are reflected in defendant's criminal record. *State v. Kennedy,* 113 Or App 134, 137, 831 P2d 712 (1992); *see also State v. Barrett,* 134 Or App 162, 165, 894 P2d 1183, *rev den* 321 Or 340 (1995) (uncharged conduct detailed in the presentencing report). The persistent involvement factor is "intended to capture, for sentencing purposes, a separate malevolent quality in the

---

[1] Defendant submitted a sentencing memorandum to the trial court identifying his objections to the departure sentence. The only portion of that memorandum that conceivably could apply to crime seriousness is the following:

"Lastly, the presentence investigation and I assume the district attorney in asking for the maximum double upward departure has viewed [defendant] as the most dangerous person who could commit this crime. I would suggest to the Court that an upward departure from a presumptive sentence could be in any range and is not necessarily the most severe as appears in this case. Although we see no need for an upward departure at all, if the Court considered that, the Court can consider an upward departure to any amount * * *."

That statement failed to put the trial court on notice that defendant asserted that it would be error to impose an upward departure on the ground of crime seriousness.

[2] OAR 253-08-002(1)(b)(D) provides, in part:

"(b) Aggravating factors:
"* * * * *

"(D) Persistent involvement in similar offenses or repetitive assaults * * *."

offender represented by the repetitive nature of the offender's criminal behavior," and "incorporates an offender's inclination to engage in behavior with increasingly serious consequences." *Kennedy*, 113 Or App at 137-38. In imposing a durational departure sentence because defendant persistently has been involved in increasingly serious criminal activity involving drugs, the trial court noted that defendant's 1988 conviction for theft involved cocaine and a gun, that his 1989 conviction for delivery of a controlled substance involved an ounce-and-a-half of cocaine and two guns, and that when he committed this crime in 1995, defendant was "the wholesale supplier restocking the retail street dealer." The trial court's imposition of an upward departure based on defendant's persistent and escalating involvement with drugs was supported by evidence in the record and by substantial and compelling reasons.

■    Finally, defendant argues that the third and fourth reasons for departure—that defendant was on parole at the time of the offense, and that defendant is not amenable to supervision—are not substantial and compelling reasons to support a *durational* departure, as opposed to a *dispositional* departure. Defendant invites us to "revisit" *State v. Williams,* 133 Or App at 195 n 2, in which we rejected a similar argument. We decline that invitation. Although the facts that defendant was on parole and is not amenable to supervision are not listed in OAR 253-08-002(1)(b) as departure factors, they may serve as a basis for departure if they are supported by evidence and form a substantial and compelling reason for departure. *Wilson,* 111 Or App at 149. We have held that "a defendant's failure to be deterred from committing crimes while on probation or release demonstrates a substantial and compelling reason to depart." *State v. Nelson,* 119 Or App 84, 87, 849 P2d 1147 (1993). That reasoning applies equally to crimes committed by a defendant while on parole, as defendant was in this case. In the light of defendant's numerous parole and probation violations, as well as his criminal convictions, the trial court observed at sentencing:

"When you're on supervision, it means nothing to you. * * * But the community just has to be free from the repetitive, very serious, very aggressive crime that you just choose to

commit, regardless of what sanction is imposed and what conditions are placed on you."

The trial court did not err in imposing a durational departure sentence.

Affirmed.