**William Darrell MARTIN, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 08–02–00081–CR.

Court of Appeals of Texas, El Paso.

April 24, 2003.

J.K. 'Rusty' Wall, Midland, for Appellant.

Al W. Schorre, Jr., District Attorney of Midland County, for State.

Before Panel No. 3 BARAJAS, C.J., LARSEN, and CHEW, JJ.

## OPINION

SUSAN LARSEN, Justice.

William Darrell Martin was convicted of driving while intoxicated. The court assessed punishment at 120 days in jail and a $800 fine. The sentence of confinement was suspended and Martin was placed on probation for eighteen months. On appeal, Martin argues that the trial court erred by refusing to give a requested jury instruction regarding the legality of his initial detention by a police officer. We affirm.

### Factual and Procedural Background

On the night of October 18, 2000, Midland Police Officer Matt Fraley was monitoring traffic while parked along the side of a road. At approximately 9:50 p.m., he noticed an old, light-colored vehicle with a really loud engine that was emitting a long trail of smoke. Although the vehicle appeared to be speeding, Fraley was unable to determine the vehicle's speed with his radar equipment. Fraley testified that he pulled onto the road and attempted to catch up with the vehicle "to initiate a traffic stop." He lost sight of the vehicle and feared that he would not be able to catch up with it. Fraley eventually saw the vehicle stopped in a traffic lane near an intersection with a green light. He also saw the driver, Martin, get out and walk towards the back of the vehicle.

Fraley pulled up behind the vehicle and turned on his overhead lights "to let him know that I was behind him and also to let traffic know that was approaching not to come up and run into him, because he was sitting in the middle of traffic." Fraley testified on cross-examination that he intended to warn Martin against speeding, cite him for an inspection violation because of the smoking vehicle, "and see if I could help him with his vehicle and have him on his way."

Fraley got out of his car and approached Martin, who was rummaging through his trunk. Martin told him that there was something wrong with his transmission and that he was looking for some transmission fluid. When Martin began talking, Fraley noticed that he slurred some words and had the strong odor of alcohol on his breath. Martin "kept uttering something about his transmission and was rifling through his trunk and seemed to be kind of lost." Fraley then asked Martin for identification. Suspecting that Martin might be intoxicated, Fraley administered several field sobriety tests. Based on the results of these tests, Fraley arrested Martin for driving while intoxicated.

Martin testified that on the night in question his car was not loud or smoking and he was not speeding.

Martin requested that the court instruct the jury to disregard evidence obtained after he was detained by Fraley unless the jurors believed beyond a reasonable doubt that Fraley had a reasonable suspicion of criminal activity when he detained Martin. The court denied the requested instruction.

### Discussion

■ To detain an individual, an officer must have "reasonable suspicion." *Bunts v. State,* 881 S.W.2d 447, 449 (Tex.App.-El Paso 1994, pet. ref'd). The term "reasonable suspicion" refers to specific, articulable facts that, when combined with rational inferences from those facts, would lead an officer reasonably to suspect that a particular person was, is, or is about to be engaged in criminal activity. *Garcia v. State,* 43 S.W.3d 527, 530 (Tex.Crim.App. 2001).

■ When an issue is raised at trial regarding whether evidence was obtained as a result of an illegal detention, "the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was [illegally] obtained . . ., the jury shall disregard any such evidence so obtained." TEX.CODE CRIM. PROC. ANN. art. 38.23(a) (Vernon Supp.2003). If there is conflicting evidence regarding whether an officer legally detained a driver, the court is statutorily bound to include a requested charge on this issue. *Reynolds v. State,* 848 S.W.2d 148, 149 (Tex.Crim.App.1993).

Martin argues that there was conflicting evidence regarding whether Fraley had reasonable suspicion to detain him: whereas Fraley testified that Martin was speeding in a loud and smoking car, Martin testified that he was not speeding and his car was neither loud nor smoking. The

State counters that this conflicting evidence is irrelevant because Martin was not detained until after Fraley smelled alcohol on him. At that point, the State argues, Fraley had a reasonable suspicion that Martin had been driving while intoxicated.

If the detention began when Fraley turned on his overhead lights and parked his car behind Martin's vehicle, then the only facts that could provide reasonable suspicion for the detention would be Fraley's observations that Martin's car was loud, smoking, and speeding. As Martin correctly points out, Martin's testimony created a fact issue about whether Fraley's observations were correct. But it is undisputed that after Fraley parked and approached Martin on foot, Fraley smelled the strong odor of alcohol on Martin and heard him slur some words. This would create a reasonable suspicion that Martin was driving while intoxicated. *See State v. Brabson,* 899 S.W.2d 741, 749 (Tex.App.-Dallas 1995), *aff'd,* 976 S.W.2d 182 (Tex. Crim.App.1998) (holding that reasonable suspicion existed when defendant honked his horn excessively and officer smelled alcohol on his breath). Therefore, if the detention did not begin until after Martin began speaking to Fraley, the dispute about the earlier facts is irrelevant.

The parties' arguments thus require us to determine at what point in time Martin was detained. This is a question of law. *Davis v. State,* 22 S.W.3d 8, 11 (Tex.App.-Houston [14th Dist.] 2000, no pet.).

■ A detention occurs when a person yields to an officer's show of authority or when a reasonable person would not feel free to decline the officer's requests or otherwise terminate the encounter. *Florida v. Bostick,* 501 U.S. 429, 436, 111 S.Ct. 2382, 2387, 115 L.Ed.2d 389 (1991); *California v. Hodari D.,* 499 U.S. 621, 629, 111 S.Ct. 1547, 1552, 113 L.Ed.2d 690 (1991);

State v. Velasquez, 994 S.W.2d 676, 678–79 (Tex.Crim.App.1999); Johnson v. State, 912 S.W.2d 227, 235 (Tex.Crim.App.1995). An officer's unarticulated intent to detain a person is irrelevant in determining whether the person was detained. Russell v. State, 717 S.W.2d 7, 11 (Tex.Crim.App. 1986). Not every encounter between a police officer and another individual is a detention. See Bostick, 501 U.S. at 434, 111 S.Ct. at 2386; State v. Perez, 85 S.W.3d 817, 819 (Tex.Crim.App.2002). For example, an officer does not need to have any level of articulable suspicion to approach an individual in a public place or to ask the individual if he is willing to answer some questions. See Bostick, 501 U.S. at 434, 111 S.Ct. at 2386; Perez, 85 S.W.3d at 819.

 Turning to the circumstances of this case, the fact that Martin's car was already stopped when Fraley pulled up behind him is not dispositive. See Garza v. State, 771 S.W.2d 549, 556 (Tex.Crim. App.1989). A detention occurs when a person in a parked car complies with a police order to roll down the window, open the door, or get out of the car. Ebarb v. State, 598 S.W.2d 842, 850 (Tex.Crim.App. [Panel Op.] 1979). But a detention does not occur if an officer merely approaches a parked vehicle and knocks on the window. Merideth v. State, 603 S.W.2d 872, 873 (Tex.Crim.App. [Panel Op.] 1980); see also Perez, 85 S.W.3d at 819 (holding that reasonable suspicion was not required when officer knocked on the door of the defendant's residence after chasing him to the residence).

The facts of this case are similar to those in Stewart v. State, 603 S.W.2d 861 (Tex.Crim.App. [Panel Op.] 1980). In Stewart, officers noticed a van parked at the end of a dead-end street. The officers aimed the patrol car's spotlight into the car, observed four people inside, and then got out of their car and approached the van on foot. The driver got out of the van without any prompting from the officers. When he opened the van's door, the officers smelled the odor of burning marijuana. Id. at 862. The Court of Criminal Appeals held that the driver was not seized when the officers approached the van because the officers did not make a show of authority until after they smelled the burning marijuana. Id.

The only important distinction between this case and Stewart is that Fraley activated his overhead lights before getting out of the car and approaching Martin. Under the circumstances of this case, we do not believe this distinction makes a difference. The New Mexico Court of Appeals has stated:

We can conceive of many situations in which people in stopped cars approached by officers flashing their lights would be free to leave because the officers would be simply communicating with them to ascertain that they are not in trouble. Under such circumstances, depending on the facts, the officers may well activate their emergency lights for reasons of highway safety or so as not to unduly alarm the stopped motorists.

State v. Baldonado, 115 N.M. 106, 847 P.2d 751, 754 (1992). The court accordingly declined to hold that a seizure occurs, as a matter of law, "whenever the police pull up behind a stopped car and turn on their flashing lights." Id. at 752; see also State v. Dubois, 75 Or.App. 394, 706 P.2d 588, 590 (1985) ("[A]n officer's use of overhead lights alone does not necessarily cause an encounter to be a stop."). We agree with this reasoning.[1]

---

1. The Court of Criminal Appeals has suggested in dicta that a detention occurs when an officer activates a patrol car's flashing lights after a motorist has voluntarily stopped a

In this case, it is undisputed that Martin's car was stopped and broken down in a traffic lane. Fraley testified that he activated his overhead lights "to let [Martin] know that I was behind him and also to let traffic know that was approaching not to come up and run into him, because he was sitting in the middle of traffic." Under these circumstances, the use of the overhead lights did not convert this encounter into a detention.

There is no evidence that Fraley did anything between the time he activated the overhead lights and the time he approached Martin that would constitute a show of authority. And, as stated above, it is undisputed that as Fraley approached Martin, Martin began talking, slurring some words, and Fraley smelled the strong odor of alcohol.[2] At this point, Fraley had reasonable suspicion to detain Martin for driving while intoxicated. *Brabson,* 899 S.W.2d at 749. Because there was no conflicting evidence regarding whether Fraley legally detained Martin, the court did not err in refusing to give the jury Martin's requested instruction.

## Conclusion

The judgment of the trial court is affirmed.

---

vehicle. *Garza,* 771 S.W.2d at 557–58. In *Garza,* however, the flashing lights were activated *before* the defendant stopped his car. *Id.* at 557. We also note that the case relied on for this dicta, *State v. Walp,* 65 Or.App. 781, 672 P.2d 374 (1983), is no longer good law in Oregon. *See State v. Blair,* 171 Or. App. 162, 14 P.3d 660, 666–67 (2000); *Dubois,* 706 P.2d at 590.

**2.** A videotape of Fraley's encounter with Martin was admitted into evidence and included in the appellate record. From a review of the tape, it appears that Fraley did not say anything before Martin began talking.