State v. Carter

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-04-063-CR

THE STATE OF TEXAS STATE

V.

KATHERINE MARIE CARTER APPELLEE

------------

FROM COUNTY CRIMINAL COURT NO. 8 OF TARRANT COUNTY

------------

MEMORANDUM
 
OPINION
(footnote: 1)

------------

The State appeals the trial court’s grant of appellee Katherine Marie Carter’s motion to suppress.  In nine points, the State contends that the trial court erred in granting appellee's motion to suppress based on its misapplication of law to the facts of Officer Petersen’s initial encounter with appellee
.  
We affirm.

At approximately 2:00 a.m. on August 7, 2003, Officer Petersen, a member of the University of Texas at Arlington Police Department, spotted a female vomiting out of the passenger side of a vehicle that was stopped in a parking lot.  Because Officer Petersen wanted to determine whether “the passenger was okay and not in need of any type of medical condition [sic],” he pulled up behind the vehicle and turned on the squad car’s spotlight.  An officer trainee accompanied him.  The other vehicle pulled forward about ten feet and then stopped.  At that point, Officer Petersen activated the squad car’s strobe light “for safety reasons . . . so that we’re visible on the street.”  He then approached the passenger side of the vehicle to determine whether the vomiting female needed medical assistance. 

After he determined that the passenger was drunk and not in need of medical assistance, Officer Petersen walked around to the driver’s side of the vehicle “for the purposes of ascertaining that the intoxicated passenger had a safe ride home.”  Appellee was seated in the driver’s seat and the engine was running.  Officer Petersen observed that appellee had bloodshot eyes and slurred speech and smelled of alcohol.  He then asked her to get out of the car and perform three field sobriety tests, which she failed. 

Appellee was charged with driving while intoxicated, and she filed a motion to suppress all evidence.  At the hearing on appellee’s motion, defense counsel argued that Officer Petersen’s initial stop of appellee was unlawful because it was not based on reasonable suspicion and did not satisfy the community care-taking function.  The State argued that no reasonable suspicion was required because Officer Petersen’s initial contact with appellee was not a detention but a consensual encounter.  The trial court granted appellee’s motion, concluding that the “stop” was not supported by the community care-taking doctrine or probable cause. 

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review.
(footnote: 2) 
 At a suppression hearing, the trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony.
(footnote: 3)  Therefore, we give almost total deference to the trial court's rulings on (1) questions of historical fact and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor.
(footnote: 4) 
 However, we review de novo a trial court's rulings on mixed questions of law and fact if they do not turn on the credibility and demeanor of witnesses.
(footnote: 5) 

The State contends that the trial court improperly granted appellee's motion to suppress based upon an erroneous legal conclusion that Officer Petersen’s initial contact with appellee was a “stop” that required Fourth Amendment justification.
(footnote: 6)  
According to the State, Officer Petersen’s initial contact with appellee was, as a matter of law,
 a police-citizen encounter, and his subsequent detention of appellee was lawful because it was supported by reasonable suspicion.
(footnote: 7)
 The Texas Court of Criminal Appeals has recognized three categories of interactions between police officers and citizens: encounters, investigative detentions, and arrests.
(footnote: 8) 
 
Unlike investigative detentions and arrests, which are seizures for  Fourth 
Amendment purposes, an encounter is a consensual interaction, which the citizen is free to terminate at any time.
(footnote: 9) 
 
The dispositive question is whether the totality of the circumstances shows that the 
police conduct at issue would have caused a reasonable person to believe that she was free to decline the officer’s requests or otherwise terminate the encounter.
(footnote: 10)  If a reasonable person would feel free to terminate the encounter, the police-citizen contact is merely a consensual encounter and does not implicate the Fourth Amendment.
(footnote: 11)
 The totality of the circumstances in this case shows that Officer Petersen’s initial contact with appellee was not merely a police-citizen encounter.  
A police officer may—as Officer Petersen did—drive up to a parked car and shine a spotlight on it without initiating a seizure.
(footnote: 12)  But after appellee pulled forward ten feet and stopped, Officer Petersen activated his patrol car’s overhead strobe lights, 
got out of the patrol car, and approached appellee’s vehicle on foot—all while appellee remained in her car.  
Although the use of emergency lights does not automatically convert an encounter into a seizure,
(footnote: 13) an officer’s activation of red and blue overhead lights typically indicates a detention.  In fact, a person commits an offense if she operates a motor vehicle and wilfully flees or attempts to elude a pursuing police vehicle when given a visual signal—such as an emergency light—to bring the vehicle to a stop.
(footnote: 14)
 Under the facts of this case, we conclude that Officer Petersen’s activation of his patrol car’s overhead lights—after appellee, in response to the officer’s activation of his vehicle’s spotlight on her car, drove forward ten feet in the parking lot of a closed business and stopped
—would have caused a reasonable person to believe that she was not free to terminate the encounter
 but was instead required to stay in the parking lot.
(footnote: 15)  Therefore, we hold that Officer Petersen’s initial contact with appellee was not a consensual encounter; instead, it was an investigative detention that required Fourth Amendment justification.
(footnote: 16)  Accordingly, we overrule the State’s points.

Having overruled the State’s points, we affirm the trial court’s order granting appellee’s motion to suppress.

JOHN CAYCE

CHIEF JUSTICE

PANEL A: CAYCE, C.J.; HOLMAN and WALKER, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED:
 October 20, 2005

FOOTNOTES
1:
See
 
Tex. R. App. P. 
47.4.

2:
Carmouche v. State
, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000)
; 
Guzman v. State
, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). 

3:
State v. Ross
, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000).

4:
Johnson v. State
, 68 S.W.3d 644, 652-53 (Tex. Crim. App. 2002).

5:
Id.

6:
Although the State also argues that the encounter did not violate the Texas Constitution, the State briefs its state and federal arguments together.

7:
Apart from arguing that Officer Petersen’s encounter with appellee was not a “stop” to which Fourth Amendment protections applied, the State does not challenge the trial court’s conclusion that the community care-taking doctrine was not satisfied under the facts of this case. 

8:
State v. Perez
, 85 S.W.3d 817, 819 (Tex. Crim. App. 2002).

9:
See
 
Gurrola v. State
, 877 S.W.2d 300, 302-03 (Tex. Crim. App. 1994). 

10:
Florida v. Bostick
, 501 U.S. 429, 439-40, 111 S. Ct. 2382, 2389 (1991)
;
 
State v. Velasquez
, 994 S.W.2d 676, 679 (Tex. Crim. App. 1999)
.

11:
See
 
United States v. Drayton, 
536 U.S. 194, 201, 122 S. Ct. 2104, 2110 (2002); 
 
Florida v. Royer, 
460 U.S. 491, 497-98, 103 S. Ct. 1319, 1324 (1983)
;
 Velasquez,
 994 S.W.2d at 679.  When police-citizen contact rises to the level of a seizure, it must be supported by reasonable suspicion, probable cause, or the community care-taking doctrine.  
Corbin v. State
, 85 S.W.3d 272, 276 (Tex. Crim. App. 2002).

12:
See Stewart v. State
, 603 S.W.2d 861, 862 (Tex. Crim. App. [Panel Op.] 1980).

13:
See Martin v. State,
 104 S.W.3d 298, 302 (Tex. App.—El Paso 2003, no pet.).
  
Martin
 is distinguishable from this case.  There, the officer activated his emergency lights behind a vehicle with a smoking tailpipe that was stopped in the middle of traffic near an intersection with a green light and whose driver had voluntarily gotten out of the car and was rummaging through the trunk.  
See id.
 at 299.  In contrast, in this case, appellee was not on the street, but was in the parking lot of a closed business, and she did not get out of her car until Officer Petersen told her to.

14:
See 
Tex. Transp. Code Ann.
 § 545.421(a)-(b) (Vernon 1999).

15:
See Drayton,
 536 U.S. at 201, 122 S.Ct. at 2110; 
Velasquez,
 994 S.W.2d at 679.  Officer Petersen’s stated belief that appellee was free to leave despite his activation of his overhead lights “for safety” was not communicated to appellee and therefore is not a relevant factor in determining whether appellee was detained.  
See Russell v. State,
 
717 S.W.2d 7, 11 (Tex. Crim. App. 1986)
; Martin,
 104 S.W.3d at 300 (both stating that officer’s unarticulated intent to detain person is irrelevant in determining whether person was detained).

16:
See Terry v. Ohio
, 
392 U.S. 1, 21, 88 S. Ct. 1868, 1880 (1968); 
Corbin,
 85 S.W.3d at 276.
  
Borrego v. State,
 on which the State relies, is inapposite.  In that case, the police officer pulled up behind a car stopped in a “bar ditch” by the shoulder of a road, and the driver stepped out of his car as the police officer was getting out of his patrol car.  
See
 No. 03-01-00235-CR, 2002 WL 245960, at *1-2 (Tex. App.—Austin Feb. 22, 2002, no pet.). Likewise, the State’s reliance on other cases in which police officers approached individuals to question them is misplaced because those cases did not involve the activation of a patrol car’s overhead lights under the circumstances present here.