COURT OF APPEALS

                                                 SECOND DISTRICT
OF TEXAS

                                                                FORT
WORTH

 

 

                                                 NO.
2-09-132-CR

 

 

THE STATE OF TEXAS                                                                     APPELLANT

 

                                                             V.

 

CYNTHIA PRIDDY                                                                                APPELLEE

 

                                                       ------------

 

              FROM
COUNTY COURT AT LAW NO. 1 OF WICHITA COUNTY

 

                                                       ------------

 

                                                      OPINION

 

                                                       ------------

The
State appeals from the trial court=s
grant of appellee Cynthia Priddy=s
motion to suppress the evidence obtained as a result of an interaction between
appellee and a Burkburnett police officer at appellee=s
parked, running vehicle, in this prosecution for misdemeanor driving while
intoxicated (DWI), enhanced with a prior misdemeanor DWI.  We reverse the trial court=s
order of suppression and remand this case for trial.








                                                Background
Facts

At
the suppression hearing, Sergeant John Klenk of the Burkburnett Police
Department testified that on the evening of March 20, 2008, he was on patrol
when dispatch received a call from an unidentified person[1]
at Red River Hospital regarding appellee, who had sought admission to the
hospital.  Over appellee=s
hearsay objection, Sergeant Klenk testified that the person from the hospital
told dispatch that the hospital could not admit appellee because the hospital
was full but also said that appellee had been drinking and appeared to be
intoxicated.  This person also said that
appellee had left the hospital, gotten into an argument with a person in a
Hummer believed to be appellee=s
husband, and left the hospital in a different Hummer.  The person from the hospital provided
dispatch with appellee=s name, make of car,
location and direction of her departure, and her address.








Sergeant
Klenk located the Hummer at around 11:00 or 11:15 p.m.Cabout
fifteen minutes after receiving the information from dispatchCon
the side of the road in front of Citibank, legally parked, but still running
and with its lights on.  The officer
testified that the Hummer was in a Abusiness@
area in downtown Burkburnett, and none of the nearby stores or businesses was
open at that time.  He pulled in behind
the Hummer, turned his spotlight on it, and ran the license tags, but he could
not tell if anyone was inside because of the heavy tint on the windows.  As he approached the Hummer, he saw appellee Alaid
over the seat,@
eating a hamburger; when she saw the officer, she sat up and rolled her window
down.  Although it is unclear whether
Sergeant Klenk gestured to appellee to roll down the window, we will presume
that the trial court believed he did.[2]  At that point, Sergeant Klenk asked appellee
for her driver=s
license.  Appellee had to fumble around
to find it, but she eventually did. 
Despite the odor of the hamburger in the vehicle, Sergeant Klenk could
also smell the odor of an alcoholic beverage coming from the vehicle.  Sergeant Klenk observed that appellee=s
eyes were bloodshot and glazed.  He asked
her to step out.

Upon
checking appellee=s license, Sergeant Klenk
identified her as Cynthia Gail Priddy and determined that her license was
suspended.  Appellee said she had come
from the hospital and admitted she had been drinking.  After appellee got out of the Hummer,
Sergeant Klenk asked her to perform field sobriety tests, which she
failed.  After appellee failed the tests,
Sergeant Klenk arrested her.








When
asked, Sergeant Klenk said his original stop was for purposes of community
caretaking, which the police generally do if a vehicle is stopped along the
side of a roadway, especially with the engine running; he wanted to make sure
that the driver was okay, especially if she was the woman who had left the
hospital.  Sergeant Klenk also stated
that he was suspicious because the vehicle was parked close to a closed bank
late at night in a high crime area.[3]  He characterized his interaction with
appellee as a voluntary encounter because she was free to leave.








Next,
Sheryl Mahon, an employee of Red River Hospital, testified.  Mahon was the Admission Specialist on staff
the night appellee sought admission to the hospital=s
chemical dependency unit.  Mahon had a
discussion with appellee about why she wanted to be admitted and told her that
there were no beds available that night. 
Mahon suggested that appellee have someone pick her up because of her Aactions
and behaviors@ and
because appellee admitted she had been drinking.  Appellee was stumbling and her speech was
slurred; she dropped things and was losing things.  Eventually, after some persuading by Mahon,
appellee called her husband, who came to the hospital to pick her up.  However, after appellee and her husband talked
in the parking lot for about ten or fifteen minutes, they each left in their
own vehicles.  Mahon then called the
Wichita Falls police[4]
because she felt appellee was intoxicated. 
Mahon told the police who she was and where she worked.  She also gave the dispatcher appellee=s
name and address, a description of her vehicle, and the direction she drove off
in.

After
Mahon testified, appellee called Sergeant Klenk back to testify.  According to Sergeant Klenk, his conversation
with dispatch that night was with Burkburnett Police dispatch; there is no way
for the Wichita Falls police dispatch to communicate directly with Burkburnett
officers in their patrol cars.

At
the close of the hearing, the trial court granted appellee=s
motion to suppress and filed extensive findings of fact and conclusions of law.[5]  The State filed this interlocutory appeal
challenging the trial court=s
order.  See Tex. Code Crim. Proc.
Ann. art. 44.01(a)(5) (Vernon 2006).

                                                 Issues
on Appeal

In
two issues, the State contends that the trial court erred in granting appellee=s
motion to suppress because (1) the officer=s
initial contact with her was a voluntary encounter and not a detention and,
alternatively, (2) the hospital=s
call to police, coupled with the circumstances of appellee=s
parked car, created reasonable suspicion to stop appellee to investigate.

                           Standard of Review
for Motions to Suppress








We
review a trial court=s ruling on a motion to
suppress evidence under a bifurcated standard of review.  Amador v. State, 221 S.W.3d 666, 673
(Tex. Crim. App. 2007); Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim.
App. 1997).  We give almost total
deference to a trial court=s
rulings on questions of historical fact and application-of-law-to-fact
questions that turn on an evaluation of credibility and demeanor, but we review
de novo application-of-law-to-fact questions that do not turn on credibility
and demeanor.  Amador, 221 S.W.3d
at 673; Estrada v. State, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); Johnson
v. State, 68 S.W.3d 644, 652B53
(Tex. Crim. App. 2002).  When the trial
court makes explicit fact findings, we determine whether the evidence, when
viewed in the light most favorable to the trial court=s
ruling, supports those fact findings.  State
v. Kelly, 204 S.W.3d 808, 818B19
(Tex. Crim. App. 2006).  We then review
the trial court=s legal ruling de novo
unless its explicit fact findings that are supported by the record are also
dispositive of the legal ruling.  Id.
at 818.

Here,
the trial court=s findings show that it
found Sergeant Klenk credible as to his testimony regarding his encounter with
appellee.  Therefore, we review the trial
court=s
conclusions of law de novo.  State v.
Garcia-Cantu, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008); Amador,
221 S.W.3d at 673.

                                                        Analysis








In
her motion to suppress, appellee contended that Sergeant Klenk impermissibly
detained and interrogated her based on an anonymous tip, that her statements to
him should be suppressed under articles 38.22 and 38.23 of the code of criminal
procedure, and that his warrantless arrest of her was impermissible.[6]  In its first issue on appeal, the State
contends the trial court erroneously suppressed the evidence discovered during
the interaction between appellee and Sergeant Klenk because it was a voluntary
encounter and that appellee was not detained until after she rolled down her
window and Sergeant Klenk smelled the odor of an alcoholic beverage, thus
giving him reasonable suspicion to investigate her for possible DWI.

Police-Citizen Interactions

The
Fourth Amendment to the United States Constitution protects against
unreasonable searches and seizures.  U.S.
Const. amend. IV.  A temporary detention
for purposes of investigation constitutes a seizure for Fourth Amendment
purposes.  See Terry v. Ohio, 392
U.S. 1, 16, 88 S. Ct. 1868, 1877 (1968). 
However, not every encounter between a civilian and a police officer
implicates the Fourth Amendment.  See
Florida v. Bostick, 501 U.S. 429, 434, 111 S. Ct. 2382, 2386 (1991); Hunter
v. State, 955 S.W.2d 102, 104 (Tex. Crim. App. 1997); State v. Bryant,
161 S.W.3d 758, 761 (Tex. AppCFort
Worth 2005, no pet.).








The
Texas Court of Criminal Appeals recognizes three categories of interactions
between police officers and citizens: 
arrests, investigative detentions, and encounters.  State v. Perez, 85 S.W.3d 817, 819
(Tex. Crim. App. 2002); Bryant, 161 S.W.3d at 761.  Unlike an investigative detention or an
arrestCeach
a seizure for Fourth Amendment purposesCan
encounter is a consensual interaction, which the citizen may terminate at any
time.  See Gurrola v. State, 877
S.W.2d 300, 302B03 (Tex. Crim. App. 1994); Bryant,
161 S.W.3d at 761.  So long as the
citizen remains free to disregard the officer=s
questions and go about his or her business, the encounter is consensual and
merits no further constitutional analysis. 
See Johnson v. State, 912 S.W.2d 227, 235 (Tex. Crim. App. 1995)
(citing California v. Hodari D ., 499 U.S. 621, 628, 111 S. Ct. 1547,
1552 (1991)); State v. Woodard, No. 02-09-00052-CR, 2010 WL 1268035, at
*4 (Tex. App.CFort
Worth April 1, 2010, no pet. h.).








Law
enforcement officers are permitted to approach individuals without probable
cause or reasonable suspicion to ask questions or even to request a
search.  See Florida v. Royer, 460
U.S. 491, 497B98,
103 S. Ct. 1319, 1324 (1983); State v. Velasquez, 994 S.W.2d 676, 678
(Tex. Crim. App. 1999); Woodard, 2010 WL 1268035, at *4.  Such encounters do not require any
justification on the officers=
part.  See United States v. Mendenhall,
446 U.S. 544, 553, 100 S. Ct. 1870, 1877 (1980); State v. Larue, 28
S.W.3d 549, 553 (Tex. Crim. App. 2000); Woodard, 2010 WL 1268035, at
*4.  A police officer is as free as any
other citizen to approach citizens on the street and ask for information.  Garcia-Cantu, 253 S.W.3d at 243; Woodard,
2010 WL 1268035, at *4.  Such
interactions may involve inconvenience or embarrassment, but they do not
involve official coercion.  Garcia-Cantu,
253 S.W.3d at 243; Woodard, 2010 WL 1268035, at *4.  Only when the implication arises that an
officer=s
authority cannot be ignored, avoided, or ended does a Fourth Amendment seizure
occur.  Garcia-Cantu, 253 S.W.3d
at 243; Woodard, 2010 WL 1268035, at *4.

Whether
a police-citizen interaction is a consensual encounter is determined by the
totality of the circumstances and Awhether
a reasonable person would feel free to decline the officer=s
requests or otherwise terminate the encounter.@  Woodard, 2010 WL 1268035, at *4; St.
George v. State, 197 S.W.3d 806, 819 (Tex. App.CFort
Worth 2006), aff=d,
237 S.W.3d 720 (Tex. Crim. App. 2007) (quoting Bostick, 501 U.S. at 436,
111 S. Ct. at 2387)); State v. Murphy, No. 02-06-00267-CR, 2007 WL
2405120, at *2 (Tex. App.CFort Worth Aug. 23, 2007, no
pet.) (mem. op., not designated for publication).








Circumstances
indicating that a police-citizen interaction is a seizure, rather than a
consensual encounter, include the threatening presence of several officers, the
officer=s
display of a weapon, physical touching of the citizen by the officer, the
officer=s
words or tone of voice indicating that compliance with the officer=s
requests might be compelled, flashing lights, or the blocking of a suspect=s
vehicle.  Mendenhall, 446 U.S. at
554, 100 S. Ct. at 1877; Woodard, 2010 WL 1268035, at *5.  But absent this type of evidence, otherwise
inoffensive conduct between a citizen and a police officer cannot, as a matter
of law, amount to a seizure of that person. 
Mendenhall, 446 U.S. at 555, 100 S. Ct. at 1877; Woodard,
2010 WL 1268035, at *5.

Officer=s
Initial Interaction With Appellee Was Voluntary Encounter

In
its conclusions of law, the trial court correctly concluded that A[a]n
officer does not need reasonable suspicion or probable cause before he talks to
a person in a public place or asks questions.@  But the trial court did not otherwise
elaborate on whether Sergeant Klenk=s
interaction with appellee was an encounter, an investigative detention, or
both.








Appellee
points to Sergeant Klenk=s activating his spotlight
and what she characterizes as an order to appellee that she Aneeded@ to
roll down her window as showing that their entire interaction was an
investigative detention, for which Sergeant Klenk did not possess reasonable
suspicion.  But, viewing the totality of
the evidence in the light most favorable to the trial court=s
ruling, we agree with the reasoning of similar cases holding that actions such
as Sergeant Klenk=s do not constitute such a
show of authority as to indicate to a reasonable person that she would not be
free to terminate the encounter.  See, e.g., Merideth v.
State, 603 S.W.2d 872, 873 (Tex. Crim. App. 1980) (holding interaction was
encounter when officer saw man and woman sitting in parked truck in parking
lot, approached truck, and knocked on driver=s
side window); Bryant, 161 S.W.3d at 760 (holding interaction was
encounter when officer Adrove to where appellee was
parked, got out of his patrol car, . . . approached appellee=s
car,@ and
knocked on window); Ashton v. State, 931 S.W.2d 5, 6 (Tex. App.CHouston
[1st Dist.] 1996, pet. ref=d)
(holding that interaction was encounter when officer approached parked car and
asked appellant to roll down window); Soto v. State, No. 05-07-00029-CR,
2007 WL 3054283, at *1 (Tex. App.CDallas
Oct. 22, 2007, pet. ref=d) (holding interaction was
encounter when officer approached car stopped at green light in right lane of
street and Adirected,@
rather than ordered, driver to roll down window) (mem. op., not designated for
publication).

There
is no evidence that Sergeant Klenk activated his patrol car=s
overhead lights or its siren when parking behind appellee=s
Hummer, nor is there any evidence that he blocked her egress from where she was
parked.  Likewise, there is no evidence
that when Sergeant Klenk approached the vehicle and gestured to appellee to
roll down the window that he engaged in any activity that would have indicated
to appellee that she was being detained or was not free to terminate the
encounter.[7]  Thus, up to the point when appellee rolled
down her window and Sergeant Klenk smelled the odor of an alcoholic beverage,
Sergeant Klenk=s
actions were justified as a voluntary encounter.  See Merideth,
603 S.W.2d at 873; Stewart v. State, 603 S.W.2d 861, 862 (Tex. Crim.
App. 1980); Woodard, 2010 WL 1268035, at *6; Bryant, 161 S.W.3d
at 761B62.[8]








Smell
of Alcoholic Beverage, Glazed and Bloodshot Eyes Provided Reasonable Suspicion
for Detention

 

Once
appellee rolled down her window and Sergeant Klenk Asmelled
the odor of an alcoholic beverage emitting from the vehicle@ and
saw appellee=s
bloodshot and glazed eyes, the voluntary encounter became an investigative detention
based upon reasonable suspicion that appellee had been driving while
intoxicated.  See Bryant, 161
S.W.3d at 762; Martin v. State, 104 S.W.3d 298, 300B02
(Tex. App.CEl
Paso 2003, no pet.).  Thus, after that
point, Sergeant Klenk was authorized to detain appellee for the purpose of
investigating whether she had been driving while intoxicated, and the trial
court abused its discretion by granting appellee=s
motion to suppress.[9]  See Woodard, 2010 WL 1268035, at *6; Bryant,
161 S.W.3d at 762; Martin, 104 S.W.3d at 302.  We sustain the State=s
first issue.








                                                     Conclusion

Having
sustained the State=s first and dispositive
issue,[10]
we reverse the trial court=s
suppression order and remand this case to the trial court for further
proceedings consistent with this opinion.

 

 

TERRIE LIVINGSTON

CHIEF JUSTICE

 

PANEL:  LIVINGSTON, C.J.; WALKER and MEIER, JJ.

 

PUBLISH

 

DELIVERED:  May 20, 2010











 
 
 
 
 




 











 
 
 
 
 




 











[1]On cross-examination,
Sergeant Klenk conceded that dispatch did not have caller ID and that the
Burkburnett police did not have the name of the employee who allegedly called.





[2]Sergeant Klenk
initially testified that when he saw appellee in the vehicle, she sat up and
rolled down the window.  But on
cross-examination, in response to the question, ANow, and as I
understand your testimony, once you saw her, you went further.  In other words, you see her eating the
hamburger, and you=re the person who
indicates that she needs to roll down the window to talk to you or get out of
the car or to talk to you or whatever,@ Sergeant Klenk answered, AYes, ma=am.  Any time we make contact with somebody, we
usually identify them or stop and identify and check welfare on them.@





[3]Sergeant Klenk later
admitted on cross-examination that he could not confirm that downtown
Burkburnett on March 20, 2008 was a high-crime area, but he did testify that
Burkburnett police officers responded to various property crimes in that area.





[4]Red River Hospital is
located in downtown Wichita Falls.





[5]Those findings and
conclusions are attached to this opinion as appendix one.





[6]On appeal, appellee
states, AIt is obvious that
the trial court=s ruling was based on
a determination that the initial interaction between Sergeant Klenk and
[appellee] was an investigative detention for which Sergeant Klenk lacked
reasonable suspicion.@





[7]For example, there is
no evidence that Sergeant Klenk pointed to his handcuffs or service weapons.





[8]The State also
contends that the trial court=s actual findings of
fact, although limited, and more particularly its conclusions of law, support a
finding that this voluntary encounter was based upon the community welfare and
care-taking function of police.  But we
need not address this contention because we hold that the initial encounter was
a voluntary encounter; therefore, Sergeant Klenk did not need any justification
for approaching appellee=s vehicle.  See Woodard, 2010 WL 1268035, at *3.





[9]Moreover, once
Sergeant Klenk received confirmation that appellee=s license was
suspended, he had probable cause to arrest her for that offense.  See Givens v. State, 949 S.W.2d 449,
451B52 (Tex. App.CFort Worth 1997, pet.
ref=d).





[10]Because the State=s second issue is in
the alternative and we sustain its first issue, we need not address the second
issue.  See Tex. R. App. P. 47.1; Vann
v. State, 216 S.W.3d 881, 889 (Tex. App.CFort Worth 2007, no pet.).