

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 2-09-132-CR

THE STATE OF TEXAS                                             APPELLANT

V.

CYNTHIA PRIDDY                                                  APPELLEE

------------

## FROM COUNTY COURT AT LAW NO. 1 OF WICHITA COUNTY

------------

## OPINION

------------

The State appeals from the trial court's grant of appellee Cynthia Priddy's motion to suppress the evidence obtained as a result of an interaction between appellee and a Burkburnett police officer at appellee's parked, running vehicle, in this prosecution for misdemeanor driving while intoxicated (DWI), enhanced with a prior misdemeanor DWI. We reverse the trial court's order of suppression and remand this case for trial.

**Background Facts**

At the suppression hearing, Sergeant John Klenk of the Burkburnett Police Department testified that on the evening of March 20, 2008, he was on patrol when dispatch received a call from an unidentified person[1] at Red River Hospital regarding appellee, who had sought admission to the hospital. Over appellee's hearsay objection, Sergeant Klenk testified that the person from the hospital told dispatch that the hospital could not admit appellee because the hospital was full but also said that appellee had been drinking and appeared to be intoxicated. This person also said that appellee had left the hospital, gotten into an argument with a person in a Hummer believed to be appellee's husband, and left the hospital in a different Hummer. The person from the hospital provided dispatch with appellee's name, make of car, location and direction of her departure, and her address.

Sergeant Klenk located the Hummer at around 11:00 or 11:15 p.m.—about fifteen minutes after receiving the information from dispatch—on the side of the road in front of Citibank, legally parked, but still running and with its lights on. The officer testified that the Hummer was in a "business" area in downtown Burkburnett, and none of the nearby stores or businesses was open at that time. He pulled in behind the Hummer, turned his spotlight on it, and ran the license tags, but he could not tell if anyone was inside because of the heavy tint on the windows. As he approached

---

[1] On cross-examination, Sergeant Klenk conceded that dispatch did not have caller ID and that the Burkburnett police did not have the name of the employee who allegedly called.

the Hummer, he saw appellee "laid over the seat," eating a hamburger; when she saw the officer, she sat up and rolled her window down. Although it is unclear whether Sergeant Klenk gestured to appellee to roll down the window, we will presume that the trial court believed he did.[2] At that point, Sergeant Klenk asked appellee for her driver's license. Appellee had to fumble around to find it, but she eventually did. Despite the odor of the hamburger in the vehicle, Sergeant Klenk could also smell the odor of an alcoholic beverage coming from the vehicle. Sergeant Klenk observed that appellee's eyes were bloodshot and glazed. He asked her to step out.

Upon checking appellee's license, Sergeant Klenk identified her as Cynthia Gail Priddy and determined that her license was suspended. Appellee said she had come from the hospital and admitted she had been drinking. After appellee got out of the Hummer, Sergeant Klenk asked her to perform field sobriety tests, which she failed. After appellee failed the tests, Sergeant Klenk arrested her.

When asked, Sergeant Klenk said his original stop was for purposes of community caretaking, which the police generally do if a vehicle is stopped along the

---

[2] Sergeant Klenk initially testified that when he saw appellee in the vehicle, she sat up and rolled down the window. But on cross-examination, in response to the question, "Now, and as I understand your testimony, once you saw her, you went further. In other words, you see her eating the hamburger, and you're the person who indicates that she needs to roll down the window to talk to you or get out of the car or to talk to you or whatever," Sergeant Klenk answered, "Yes, ma'am. Any time we make contact with somebody, we usually identify them or stop and identify and check welfare on them."

3

side of a roadway, especially with the engine running; he wanted to make sure that the driver was okay, especially if she was the woman who had left the hospital. Sergeant Klenk also stated that he was suspicious because the vehicle was parked close to a closed bank late at night in a high crime area.[3] He characterized his interaction with appellee as a voluntary encounter because she was free to leave.

Next, Sheryl Mahon, an employee of Red River Hospital, testified. Mahon was the Admission Specialist on staff the night appellee sought admission to the hospital's chemical dependency unit. Mahon had a discussion with appellee about why she wanted to be admitted and told her that there were no beds available that night. Mahon suggested that appellee have someone pick her up because of her "actions and behaviors" and because appellee admitted she had been drinking. Appellee was stumbling and her speech was slurred; she dropped things and was losing things. Eventually, after some persuading by Mahon, appellee called her husband, who came to the hospital to pick her up. However, after appellee and her husband talked in the parking lot for about ten or fifteen minutes, they each left in their own vehicles. Mahon then called the Wichita Falls police[4] because she felt appellee was intoxicated. Mahon told the police who she was and where she

---

[3] Sergeant Klenk later admitted on cross-examination that he could not confirm that downtown Burkburnett on March 20, 2008 was a high-crime area, but he did testify that Burkburnett police officers responded to various property crimes in that area.

[4] Red River Hospital is located in downtown Wichita Falls.

worked. She also gave the dispatcher appellee's name and address, a description of her vehicle, and the direction she drove off in.

After Mahon testified, appellee called Sergeant Klenk back to testify. According to Sergeant Klenk, his conversation with dispatch that night was with Burkburnett Police dispatch; there is no way for the Wichita Falls police dispatch to communicate directly with Burkburnett officers in their patrol cars.

At the close of the hearing, the trial court granted appellee's motion to suppress and filed extensive findings of fact and conclusions of law.[5] The State filed this interlocutory appeal challenging the trial court's order. *See* Tex. Code Crim. Proc. Ann. art. 44.01(a)(5) (Vernon 2006).

## Issues on Appeal

In two issues, the State contends that the trial court erred in granting appellee's motion to suppress because (1) the officer's initial contact with her was a voluntary encounter and not a detention and, alternatively, (2) the hospital's call to police, coupled with the circumstances of appellee's parked car, created reasonable suspicion to stop appellee to investigate.

## Standard of Review for Motions to Suppress

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim.

---

[5] Those findings and conclusions are attached to this opinion as appendix one.

5

App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We give almost total deference to a trial court's rulings on questions of historical fact and application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor, but we review de novo application-of-law-to-fact questions that do not turn on credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002). When the trial court makes explicit fact findings, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those fact findings. *State v. Kelly*, 204 S.W.3d 808, 818–19 (Tex. Crim. App. 2006). We then review the trial court's legal ruling de novo unless its explicit fact findings that are supported by the record are also dispositive of the legal ruling. *Id*. at 818.

Here, the trial court's findings show that it found Sergeant Klenk credible as to his testimony regarding his encounter with appellee. Therefore, we review the trial court's conclusions of law de novo. *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008); *Amador*, 221 S.W.3d at 673.

**Analysis**

In her motion to suppress, appellee contended that Sergeant Klenk impermissibly detained and interrogated her based on an anonymous tip, that her statements to him should be suppressed under articles 38.22 and 38.23 of the code

6

of criminal procedure, and that his warrantless arrest of her was impermissible.[6] In its first issue on appeal, the State contends the trial court erroneously suppressed the evidence discovered during the interaction between appellee and Sergeant Klenk because it was a voluntary encounter and that appellee was not detained until after she rolled down her window and Sergeant Klenk smelled the odor of an alcoholic beverage, thus giving him reasonable suspicion to investigate her for possible DWI.

**Police-Citizen Interactions**

The Fourth Amendment to the United States Constitution protects against unreasonable searches and seizures. U.S. Const. amend. IV. A temporary detention for purposes of investigation constitutes a seizure for Fourth Amendment purposes. *See Terry v. Ohio*, 392 U.S. 1, 16, 88 S. Ct. 1868, 1877 (1968). However, not every encounter between a civilian and a police officer implicates the Fourth Amendment. *See Florida v. Bostick*, 501 U.S. 429, 434, 111 S. Ct. 2382, 2386 (1991); *Hunter v. State*, 955 S.W.2d 102, 104 (Tex. Crim. App. 1997); *State v. Bryant*, 161 S.W.3d 758, 761 (Tex. App—Fort Worth 2005, no pet.).

The Texas Court of Criminal Appeals recognizes three categories of interactions between police officers and citizens: arrests, investigative detentions,

---

[6] On appeal, appellee states, "It is obvious that the trial court's ruling was based on a determination that the initial interaction between Sergeant Klenk and [appellee] was an investigative detention for which Sergeant Klenk lacked reasonable suspicion."

and encounters. *State v. Perez*, 85 S.W.3d 817, 819 (Tex. Crim. App. 2002); *Bryant*, 161 S.W.3d at 761. Unlike an investigative detention or an arrest—each a seizure for Fourth Amendment purposes—an encounter is a consensual interaction, which the citizen may terminate at any time. *See Gurrola v. State*, 877 S.W.2d 300, 302–03 (Tex. Crim. App. 1994); *Bryant*, 161 S.W.3d at 761. So long as the citizen remains free to disregard the officer's questions and go about his or her business, the encounter is consensual and merits no further constitutional analysis. *See Johnson v. State*, 912 S.W.2d 227, 235 (Tex. Crim. App. 1995) (citing *California v. Hodari D* ., 499 U.S. 621, 628, 111 S. Ct. 1547, 1552 (1991)); *State v. Woodard*, No. 02-09-00052-CR, 2010 WL 1268035, at *4 (Tex. App.—Fort Worth April 1, 2010, no pet. h.).

Law enforcement officers are permitted to approach individuals without probable cause or reasonable suspicion to ask questions or even to request a search. *See Florida v. Royer*, 460 U.S. 491, 497–98, 103 S. Ct. 1319, 1324 (1983); *State v. Velasquez*, 994 S.W.2d 676, 678 (Tex. Crim. App. 1999); *Woodard*, 2010 WL 1268035, at *4. Such encounters do not require any justification on the officers' part. *See United States v. Mendenhall*, 446 U.S. 544, 553, 100 S. Ct. 1870, 1877 (1980); *State v. Larue*, 28 S.W.3d 549, 553 (Tex. Crim. App. 2000); *Woodard*, 2010 WL 1268035, at *4. A police officer is as free as any other citizen to approach citizens on the street and ask for information. *Garcia-Cantu*, 253 S.W.3d at 243; *Woodard*, 2010 WL 1268035, at *4. Such interactions may involve inconvenience

or embarrassment, but they do not involve official coercion. *Garcia-Cantu*, 253 S.W.3d at 243; *Woodard*, 2010 WL 1268035, at *4. Only when the implication arises that an officer's authority cannot be ignored, avoided, or ended does a Fourth Amendment seizure occur. *Garcia-Cantu*, 253 S.W.3d at 243; *Woodard*, 2010 WL 1268035, at *4.

Whether a police-citizen interaction is a consensual encounter is determined by the totality of the circumstances and "whether a reasonable person would feel free to decline the officer's requests or otherwise terminate the encounter." *Woodard*, 2010 WL 1268035, at *4; *St. George v. State*, 197 S.W.3d 806, 819 (Tex. App.—Fort Worth 2006), *aff'd*, 237 S.W.3d 720 (Tex. Crim. App. 2007) (quoting *Bostick*, 501 U.S. at 436, 111 S. Ct. at 2387)); *State v. Murphy*, No. 02-06-00267-CR, 2007 WL 2405120, at *2 (Tex. App.—Fort Worth Aug. 23, 2007, no pet.) (mem. op., not designated for publication).

Circumstances indicating that a police-citizen interaction is a seizure, rather than a consensual encounter, include the threatening presence of several officers, the officer's display of a weapon, physical touching of the citizen by the officer, the officer's words or tone of voice indicating that compliance with the officer's requests might be compelled, flashing lights, or the blocking of a suspect's vehicle. *Mendenhall*, 446 U.S. at 554, 100 S. Ct. at 1877; *Woodard*, 2010 WL 1268035, at *5. But absent this type of evidence, otherwise inoffensive conduct between a citizen and a police officer cannot, as a matter of law, amount to a seizure of that

9

person.  *Mendenhall*, 446 U.S. at 555, 100 S. Ct. at 1877; *Woodard*, 2010 WL 1268035, at *5.

**Officer's Initial Interaction With Appellee Was Voluntary Encounter**

In its conclusions of law, the trial court correctly concluded that "[a]n officer does not need reasonable suspicion or probable cause before he talks to a person in a public place or asks questions."  But the trial court did not otherwise elaborate on whether Sergeant Klenk's interaction with appellee was an encounter, an investigative detention, or both.

Appellee points to Sergeant Klenk's activating his spotlight and what she characterizes as an order to appellee that she "needed" to roll down her window as showing that their entire interaction was an investigative detention, for which Sergeant Klenk did not possess reasonable suspicion.  But, viewing the totality of the evidence in the light most favorable to the trial court's ruling, we agree with the reasoning of similar cases holding that actions such as Sergeant Klenk's do not constitute such a show of authority as to indicate to a reasonable person that she would not be free to terminate the encounter.  *See, e.g.*, *Merideth v. State*, 603 S.W.2d 872, 873 (Tex. Crim. App. 1980) (holding interaction was encounter when officer saw man and woman sitting in parked truck in parking lot, approached truck, and knocked on driver's side window); *Bryant*, 161 S.W.3d at 760 (holding interaction was encounter when officer "drove to where appellee was parked, got out of his patrol car, . . . approached appellee's car," and knocked on window); *Ashton*

10

*v. State*, 931 S.W.2d 5, 6 (Tex. App.—Houston [1st Dist.] 1996, pet. ref'd) (holding that interaction was encounter when officer approached parked car and asked appellant to roll down window); *Soto v. State*, No. 05-07-00029-CR, 2007 WL 3054283, at *1 (Tex. App.—Dallas Oct. 22, 2007, pet. ref'd) (holding interaction was encounter when officer approached car stopped at green light in right lane of street and "directed," rather than ordered, driver to roll down window) (mem. op., not designated for publication).

There is no evidence that Sergeant Klenk activated his patrol car's overhead lights or its siren when parking behind appellee's Hummer, nor is there any evidence that he blocked her egress from where she was parked. Likewise, there is no evidence that when Sergeant Klenk approached the vehicle and gestured to appellee to roll down the window that he engaged in any activity that would have indicated to appellee that she was being detained or was not free to terminate the encounter.[7] Thus, up to the point when appellee rolled down her window and Sergeant Klenk smelled the odor of an alcoholic beverage, Sergeant Klenk's actions were justified as a voluntary encounter. *See Merideth*, 603 S.W.2d at 873; *Stewart v. State*, 603 S.W.2d 861, 862 (Tex. Crim. App. 1980); *Woodard*, 2010 WL 1268035, at *6; *Bryant*, 161 S.W.3d at 761–62.[8]

---

[7] For example, there is no evidence that Sergeant Klenk pointed to his handcuffs or service weapons.

[8] The State also contends that the trial court's actual findings of fact, although limited, and more particularly its conclusions of law, support a finding that

11

**Smell of Alcoholic Beverage, Glazed and Bloodshot Eyes Provided Reasonable Suspicion for Detention**

Once appellee rolled down her window and Sergeant Klenk "smelled the odor of an alcoholic beverage emitting from the vehicle" and saw appellee's bloodshot and glazed eyes, the voluntary encounter became an investigative detention based upon reasonable suspicion that appellee had been driving while intoxicated. *See Bryant*, 161 S.W.3d at 762; *Martin v. State*, 104 S.W.3d 298, 300–02 (Tex. App.—El Paso 2003, no pet.). Thus, after that point, Sergeant Klenk was authorized to detain appellee for the purpose of investigating whether she had been driving while intoxicated, and the trial court abused its discretion by granting appellee's motion to suppress.[9] *See Woodard*, 2010 WL 1268035, at *6; *Bryant*, 161 S.W.3d at 762; *Martin*, 104 S.W.3d at 302. We sustain the State's first issue.

---

this voluntary encounter was based upon the community welfare and care-taking function of police. But we need not address this contention because we hold that the initial encounter was a voluntary encounter; therefore, Sergeant Klenk did not need any justification for approaching appellee's vehicle. *See Woodard*, 2010 WL 1268035, at *3.

[9] Moreover, once Sergeant Klenk received confirmation that appellee's license was suspended, he had probable cause to arrest her for that offense. *See Givens v. State*, 949 S.W.2d 449, 451–52 (Tex. App.—Fort Worth 1997, pet. ref'd).

## Conclusion

Having sustained the State's first and dispositive issue,[10] we reverse the trial court's suppression order and remand this case to the trial court for further proceedings consistent with this opinion.


                                     TERRIE LIVINGSTON
                                     CHIEF JUSTICE

PANEL:  LIVINGSTON, C.J.; WALKER and MEIER, JJ.

PUBLISH

DELIVERED:  May 20, 2010

---

[10] Because the State's second issue is in the alternative and we sustain its first issue, we need not address the second issue.  *See* Tex. R. App. P. 47.1; *Vann v. State*, 216 S.W.3d 881, 889 (Tex. App.—Fort Worth 2007, no pet.).

13

NO. 43561-E

| THE STATE OF TEXAS | § | IN THE COUNTY COURT |
| | § | |
| VS. | § | AT LAW NO. 1 |
| | § | |
| CYNTHIA PRIDDY | § | WICHITA COUNTY, TEXAS |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

| Granted | Denied | Findings of Fact |
|---------|--------|------------------|
| ✓ | | On March 20, 2008, Sgt. John Klenk (Sgt. Klenk), was a certified peace officer employed by the Burkburnett Police Department. |
| ✓ | | Dispatch informed Sgt. Klenk that an employee of Red River Mental Health Hospital (Red River) had called to report that the defendant, Cynthia Priddy, had attempted to admit herself into the hospital, but she was not admitted because there were no available beds. |
| ✓ | | Dispatch informed Sgt. Klenk that the caller indicated that Cynthia Priddy appeared intoxicated and that she had left Red River driving a white Hummer vehicle. |
| ✓ | | The caller told the dispatcher that the address Cynthia Priddy provided was in Burkburnett, Texas and that the defendant had driven away from Red River in the general direction of Burkburnett, Texas. |
| ✓ | | At approximately 11:00 p.m. Sgt. Klenk spotted a white Hummer vehicle parked on the side of the road in Burkburnett, Texas and all of the surrounding businesses were closed. |
| ✓ | | Sgt. Klenk parked his patrol car behind the Hummer, and he observed that the Hummer's engine was running and its lights were on. |
| ✓ | | Sgt. Klenk couldn't tell whether the vehicle was occupied because the windows were tinted and he could not see a person's head. |
| ✓ | | Sgt. Klenk approached the driver side door of the Hummer and he observed the defendant leaning over eating in the Hummer. |
| ✓ | | The defendant rolled down the driver side window of the Hummer to speak to Sgt. Klenk. |
| ✓ | | Sgt. Klenk asked the defendant whether she had been at Red River that night, and the defendant confirmed that she had been at Red River but that she was not admitted because there were no available beds. |
| ✓ | | The defendant provided Sgt. Klenk with a driver's license which identified her as Cynthia Priddy. |
| ✓ | | Sgt. Klenk performed a records check on Cynthia Priddy which revealed that her driver's license was suspended. |
| ✓ | | During the course of his conversation with the defendant, Sgt. Klenk smelled the odor of an alcoholic beverage emitting from the vehicle. |

27

14

| Granted | Denied | Conclusions of Law |
|---------|--------|--------------------|
| ✓ | | An officer does not need reasonable suspicion or probable cause before he talks to a person in a public place or asks questions. |
| ✓ | | A police officer may conduct a temporary lawful detention when he has a reasonable suspicion to believe a person is violating the law or has recently violated the law. |
| ✓ | | Reasonable suspicion exists if the officer has specific articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably suspect a particular person has engaged, is engaging, or soon will be engaging in criminal activity. |
| ✓ | | A police officer may stop and briefly detain a person suspected of criminal activity on less information than is constitutionally required for probable cause to arrest. |
| ✓ | | An informant's detailed description of wrongdoing, along with a statement that the informant actually saw the reported event entitles the informant's tip to greater weight than otherwise might be the case. |
| ✓ | | Sheryl Mahon, the person who contacted the dispatcher, identified herself and her place of employment. |
| | ✓ | Sheryl Mahon should have been given more weight by the police because she provided a detailed description of the facts surrounding the defendant's illegal actions. |
| ✓ | | A phone call, supported by additional facts allows a police officer to reasonably conclude that a tip is reliable and detention is justified. |
| ✓ | | Since Sheryl Mahon identified herself to the dispatcher, identified her place of employment, and provided the defendant's name, place of residence, and a description of the vehicle she was driving, the officer could reasonably conclude that the information provided was reliable. |
| ✓ | | Under the "community caretaking" exception to the Fourth Amendment and as part of their duty to serve and protect, police officers may stop and assist individuals whom a reasonable person would believe is in need of help based on the totality of the circumstances. |

Signed and entered on this the 28 day of April, 2009.

_____
Judge Presiding

28