02-09-406-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

NO.  02-09-00406-CR

 

 


 
 
 James Leon Huddleston
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

----------

 

FROM County
Criminal Court No. 10 OF Tarrant COUNTY

----------

 

MEMORANDUM
OPINION[1]

----------

 

I. 
Introduction

          Appellant
James Leon Huddleston appeals following his guilty plea to driving while
intoxicated and challenges the trial court’s denial of his motion to suppress
evidence.  He contends in two points that the trial court abused its discretion
by denying the motion to suppress because his detention was not based on
reasonable suspicion and because the manner in which the police conducted a
blood draw was unreasonable.  We affirm.

II. 
Factual and Procedural Background

          At
2:45 a.m. on July 5, 2008, the police received a concerned-citizen call about a
white Ford Ranger that had been parked beside the road, with its lights on, for
more than an hour.  When Officer C.A. Bain arrived at the scene, he observed
the white Ford Ranger on the shoulder.  Officer Bain testified that he believed
this was a dangerous situation because it was unusual for a vehicle to be
parked in that location at that time of night and because there had been
several vehicle burglaries in the area.  Officer Bain approached the
vehicle and noticed that the vehicle’s engine was running, that its lights were
on, and that the driver’s side window was partially rolled down.  He also
discovered Huddleston asleep in the driver’s seat with two beer cans within
reach.  Officer Bain examined the surrounding area to determine the presence of
any weapons and turned the vehicle off in case Huddleston startled when
waking.  After waking Huddleston, Officer Bain smelled alcohol on Huddleston’s
breath and observed that Huddleston had bloodshot, watery eyes.  Huddleston
explained his location by stating that he had been called into work and was
waiting for the gates to open. 

          Officer
Bain asked Huddleston if he had been drinking, and Huddleston said that he
drank two 24-ounce beers around 6:00 p.m. the previous day.  Officer Bain
testified that Huddleston appeared disoriented and confused about a beeping
sound from his vehicle.  Officer Bain then requested that Huddleston step out
of the vehicle, and Huddleston stumbled when exiting.  Officer Bain requested
that Huddleston perform several field sobriety tests (FST), and Huddleston
illustrated multiple signs of intoxication before he refused to continue the
test:  three clues on the HGN and five clues on the “walk and turn” and the “one-leg
stand.”  Prior to the FSTs, Huddleston informed Officer Bain of a prior back
injury.

          Upon
completion of the FSTs, Officer Bain detained Huddleston and subsequently spoke
to his mother over the phone about possible medical conditions.  Huddleston’s
mother confirmed the back injury but informed the officer that Huddleston had
no current medical conditions that would affect an FST.  Officer Bain arrested
Huddleston for driving while intoxicated. 

          Officer
Bain transported Huddleston to the jail for a blood draw in the “intox room.” 
Officer Bain read Huddleston the required DIC-24 warning and requested a breath
sample, and Huddleston refused the request.  Officer Bain then prepared a
search warrant affidavit in order to obtain a blood sample as evidence of the
crime of driving while intoxicated.  He presented the affidavit to a local
magistrate, and Officer Bain took Huddleston to the intox room” after the
magistrate signed the search warrant.

          Officer
Ben Singleton drew Huddleston’s blood.  Officer Singleton testified that the
“clean room” at the Fort Worth Police Department was used solely for blood
draws during that weekend, that it contained a phlebotomy chair, and that it
was consistently cleaned with a bleach and water solution before and after each
draw.  He testified that he was qualified to perform venipunctures within the
scope of his employment because he had completed a blood-draw training program,
and he testified that he conducted Huddleston’s blood draw according to his
training.  There is no evidence in the record establishing that Officer
Singleton acquired a medical history from Huddleston.

III. 
Standard of Review

          We
review a trial court’s ruling on a motion to suppress evidence under a
bifurcated standard of review.  Amador v. State, 221 S.W.3d 666, 673
(Tex. Crim. App. 2007); Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim.
App. 1997).  We give almost total deference to a trial court’s ruling on
questions of historical fact and application-of-law-to-fact questions that turn
on an evaluation of credibility and demeanor, but we review de novo
application-of-law-to-fact questions that do not turn on credibility and
demeanor.  Amador, 221 S.W.3d at 673; Estrada v. State, 154
S.W.3d 604, 607 (Tex. Crim. App. 2005); Johnson v. State, 68 S.W.3d 644,
652–53 (Tex. Crim. App. 2002).

IV. 
Reasonable Suspicion

Huddleston
contends in his first point that the trial court abused its discretion by
denying his motion to suppress because there was no reasonable suspicion to
detain him.  The State responds that Officer Bain’s initial contact with
Huddleston was a valid consensual encounter and that Huddleston’s continued
detention was supported by reasonable suspicion.

A. 
Applicable Law

1. 
Consensual Encounter 

The
Texas Court of Criminal Appeals has recognized three categories of interactions
between police officers and citizens:  encounters, investigative detentions,
and arrests.  State v. Perez, 85 S.W.3d 817, 819 (Tex. Crim. App.
2002).  Unlike investigative detentions and arrests, which are seizures for
Fourth Amendment purposes, an encounter is a consensual interaction that the
citizen is free to terminate at any time.  See Gurrola v. State, 877
S.W.2d 300, 302–03 (Tex. Crim. App. 1994).  The dispositive question is whether
the totality of the circumstances shows that the police conduct at issue would
have caused a reasonable person to believe that he was free to decline the
officer’s requests or otherwise terminate the encounter.  Florida v. Bostick,
501 U.S. 429, 439–40, 111 S. Ct. 2382, 2389 (1991); State v. Velasquez,
994 S.W.2d 676, 679 (Tex. Crim. App. 1999).  If a reasonable person would feel
free to terminate the encounter, the police-citizen contact is merely a
consensual encounter and does not implicate the Fourth Amendment.  See
United States v. Drayton, 536 U.S. 194, 201, 122 S. Ct. 2105, 2110 (2002); Florida
v. Royer, 460 U.S. 491, 497–98, 103 S. Ct. 1319, 1324 (1983); Velasquez,
994 S.W.2d at 679.  

Circumstances
that may indicate that a police-citizen interaction is a seizure, rather than a
consensual encounter, include the threatening presence of several officers, the
display of a weapon by an officer, some physical touching of the person of the
citizen, or use of language or tone of voice indicating that compliance with
the officer’s requests might be compelled.  United States v. Mendenhall,
446 U.S. 544, 554, 100 S. Ct. 1870, 1877 (1980).  Absent some such evidence,
however, otherwise inoffensive conduct between a citizen and a police officer
cannot, as a matter of law, amount to a seizure of that person.  Id.

          2. 
Reasonable Suspicion

“No
bright-line rule governs when a consensual encounter becomes a seizure.”  State
v. Woodard, No. PD-0828-10, 2011 WL 1261320, at *4 (Tex. Crim. App. Apr. 6,
2011).  “Generally, however, when an officer through force or a showing of
authority restrains a citizen’s liberty, the encounter is no longer
consensual.”  Id.  “This is the point at which an encounter becomes a
detention or arrest, both of which are seizures under the Fourth Amendment.”  Id. 
“Thus, Fourth Amendment scrutiny becomes necessary.”  Id.

A
temporary investigative detention is permissible provided the officer has a
reasonable suspicion that the individual has engaged in criminal activity.  See
Terry v. Ohio, 392 U.S. 1, 27, 88 S. Ct. 1868, 1883 (1968).  Reasonable
suspicion exists when an officer has specific articulable facts that, when
combined with rational inferences from those facts, would lead him reasonably
to conclude that a particular person is, has been, or soon will be engaged in
criminal activity.  Ford v. State, 158 S.W.3d 488, 492 (Tex. Crim. App.
2005).

B.  Discussion

          In
State v. Priddy, this court reversed a trial court’s grant of a motion
to suppress and held that the police officer’s initial encounter with Priddy
was a consensual police-citizen encounter that transitioned into an
investigative detention supported by reasonable suspicion.  See 321
S.W.3d 82, 87–88 (Tex. App.—Fort Worth 2010, pet. ref’d).  There, the officer
received a dispatch that Priddy had just left a hospital and appeared to be
intoxicated.  Id. at 84.  The dispatch also provided the officer with
Priddy’s name, the make of her vehicle, and the direction of her travel.  Id. 
The officer located Priddy’s vehicle fifteen minutes later in a business area
of town, legally parked but still running with its lights on.  Id.  The
officer parked behind Priddy’s vehicle, turned his spotlight on, and ran the
vehicle’s license plate.  Id.  When the officer approached Priddy’s
vehicle, he saw Priddy inside, eating a hamburger.  Id.  When Priddy
rolled down the window at the officer’s request, the officer smelled the odor
of alcoholic beverages and observed that Priddy had glazed and bloodshot eyes. 
Id.  We concluded that the officer’s initial interaction was not illegal
because the officer had not engaged in a show of authority that would lead a
reasonable person to believe she was not free to terminate the encounter.  Id.
at 87–88.  We further concluded that once Priddy rolled down her window and the
officer noticed her glazed and bloodshot eyes and smelled the odor of alcoholic
beverages, “the voluntary encounter became an investigative detention based
upon reasonable suspicion that [Priddy] had been driving while intoxicated.”  Id.
at 88.

          Similar
to Priddy, Officer Bain was justified in approaching Huddleston’s
vehicle and inspecting the situation.  A citizen reported at 2:45 a.m. on July
5, 2008, that a white Ford Ranger had been parked on the side of the road with
its lights on for more than an hour.  Officer Bain was dispatched to the
reported location and observed the described vehicle.  Officer Bain did not
know whether someone in the vehicle was in distress, but the circumstances
warranted further investigation.  We conclude, as we did in Priddy, that
Officer Bain’s initial interaction with Huddleston was a consensual
police-citizen encounter that did not implicate the Fourth Amendment.[2] 
See id. at 87–88. 

          Officer
Bain could not temporarily detain Huddleston beyond the initial encounter,
however, without reasonable suspicion.  See Woodard, 2011 WL
1261320, at *4.  In the early morning hours following the July Fourth holiday,
Officer Bain arrived at the scene to see a vehicle parked on the side of a busy
roadway, with its lights on, its engine running, and Huddleston sleeping inside
with two beer cans within reach.  Immediately after waking Huddleston, Officer
Bain noticed Huddleston’s disorientation, his bloodshot and watery eyes, the odor
of alcohol on his breath, and his instability when he exited the vehicle. 
Based on a totality of the circumstances, Officer Bain had sufficient
articulable facts supporting a reasonable suspicion that Huddleston had been
engaged in criminal activity.  See Priddy, 321 S.W.3d at 87–88; see
also Ford, 158 S.W.3d at 492.  He was therefore justified in temporarily
detaining Huddleston to conduct further investigation.

          We
hold that Officer Bain’s initial approach and contact with Huddleston did not
violate the Fourth Amendment because it was a consensual police-citizen
encounter and that the initial encounter escalated into an investigative
detention supported by reasonable suspicion.  See Priddy, 321
S.W.3d at 87–88.  Accordingly, we overrule Huddleston’s first point.

V. 
Blood Draw

In
his second point, Huddleston asserts that the trial court abused its discretion
by denying his motion to suppress because the manner in which his blood draw
was conducted was unreasonable.  Specifically, Huddleston urges that this case is
governed by our prior opinion in State v. Johnston, in which we held
that the manner in which the blood draw was taken was unreasonable because,
among other things, there was no inquiry into Johnston’s medical or general
health condition.  See 305 S.W.3d 746, 760 (Tex. App.—Fort Worth 2009), rev’d,
336 S.W.3d 649 (Tex. Crim. App. 2011).

Huddleston
argues that the present appeal is identical to Johnston in all material
respects and that because the police officers made no inquiry of his medical
history, the blood draw was not medically acceptable.  Indeed, Appellant argues
that the “only difference” between this case and Johnston “is that the trial
court erroneously overruled the motion in this cause and the trial court
correctly granted the motion to suppress in Johnston.”  Johnston,
however, was recently reversed by the court of criminal appeals.  See State
v. Johnston, 336 S.W.3d 649 (Tex. Crim. App. 2011).

In
relevant part, the court of criminal appeals held:

          Here, the
court of appeals was incorrect to conclude that the officers’ failure to
inquire into Johnston’s medical history and follow up on her condition
subjected Johnston to an unjustified risk of medical harm, thereby supporting a
ruling that the draw was unreasonable.  The [United States] Supreme Court has
taken into account the existence of specific medical conditions that may create
an unjustified risk, trauma, or pain in ruling that blood-draw tests, when used
on the general population, are reasonable.  So there is a presumption that
venipuncture blood-draw tests are reasonable under the Fourth Amendment,
despite recognized medical anomalies and exceptions that may render the
administration of such a test unreasonable.  Thus, the failure to make an
inquiry into an individual’s medical history before drawing blood and to
conduct a follow up examination does not render blood draws per se
unreasonable, as the court of appeals intimated.

 

          Implicit
within Schmerber is that each suspect bears the burden of showing that a
venipuncture blood draw is not a reasonable means to obtain a blood alcohol
level assessment as to him or her, individually.  And in the absence of any
record evidence showing that a venipuncture blood draw would not be reasonable
in a particular case due to a verifiable medical condition, we will presume
that the choice to administer such a test is reasonable.  A DWI suspect,
naturally familiar with his or her own medical history, is in the best position
to identify and disclose any peculiar medical condition that could result in
risk, trauma, or more than de minimus pain if a blood draw were to be
performed.

Id. at
659–60 (discussing Schmerber v. California, 384 U.S. 757, 771, 86 S. Ct.
1826, 1836 (1966)).

Huddleston
does not point to any evidence that a venipuncture blood draw was not a
reasonable means to obtain a blood alcohol level assessment as to him
individually.  He instead relies exclusively on our previous holding in Johnston. 
Because we are bound by the court of criminal appeals’s contrary holding in Johnston,
we overrule Huddleston’s second point.

VI. 
Conclusion

          Having
overruled each of Huddleston’s two points, we affirm the trial court’s
judgment.

 

ANNE GARDNER
JUSTICE

 

PANEL: 
GARDNER,
MCCOY, and MEIER, JJ.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  August 4, 2011









[1]See Tex. R. App. P. 47.4.





[2]Huddleston does not point
to any evidence that Officer Bain made a show of authority that would lead a
reasonable person to believe he was not free to discontinue the encounter. 
Indeed, Huddleston does not acknowledge the possibility of a consensual
encounter in his brief, despite the trial court’s conclusion of law that
Officer Bain’s initial contact with him was a consensual police-citizen
encounter.