

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-14-00065-CR

GLADWIN MARSHALL JACOB, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the County Criminal Court No. 2
Denton County, Texas
Trial Court No. CR-2012-00416-B, Honorable Virgil Vahlenkamp, Jr., Presiding

October 17, 2014

## MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

Appellant, Gladwin Marshall Jacob, appeals his conviction for the offense of driving while intoxicated,[1] and subsequent sentence of 75 days in the Denton County Jail. The jail time portion of the sentence was suspended and appellant was placed on community supervision for 15 months. Appellant was also ordered to pay a fine of $500. On appeal, appellant contends that the trial court committed reversible error when it denied his motion to suppress evidence. We will affirm.

---

[1] See TEX. PENAL CODE ANN. § 49.04(a) (West Supp. 2014).

Factual and Procedural Background

On November 28, 2011, Officer Tice of the Lewisville Police Department was dispatched to a call of "shots-fired" at a McDonald's restaurant. The dispatch advised that the vehicle driven by the suspects was a red Ford Mustang. The suspects were described as "two black males."

While patrolling the area, Tice noticed a red Mustang parked in a closed McDonald's parking lot. Tice pulled in the parking lot and parked his patrol vehicle in such a manner as to not block the red Mustang. Tice did not turn his emergency lights on when he pulled into the parking lot and he did not shine his spotlight on the red Mustang. Upon approaching the red Mustang, Tice observed appellant, a white male, behind the wheel and realized that this could not be one of the suspects connected to the "shots-fired" dispatch.

Once at the door of appellant's vehicle, Tice tapped on the window and appellant lowered the window.[2] Once appellant lowered the window, Tice could smell a heavy odor of an alcoholic beverage emitting from the vehicle. Tice then commenced a driving while intoxicated investigation that resulted in the charge for which appellant was convicted.

Appellant filed a motion to suppress the evidence of his detention and arrest. Likewise, appellant requested the trial court to suppress any evidence gathered as a result of his detention and arrest. The trial court did not conduct a hearing on the motion to suppress. Instead, the evidence surrounding the detention and arrest of

---

[2] Appellant's brief states that Tice knocked on the window and motioned for appellant to lower the window.

appellant was testified to during the jury trial and the trial court heard counsel's argument and the testimony of appellant out of the presence of the jury.

Appellant testified that Tice approached his vehicle with his flashlight in his hand, knocked on the window, and motioned for appellant to lower the window. Further, appellant testified that Tice directed the flashlight into his face while asking him questions. Appellant opined that he did not feel that he was free to leave and that he had no choice but to follow the directions of Tice.

After hearing the relevant testimony, the trial court denied the motion to suppress. Subsequently, the trial court entered written findings of fact and conclusions of law. The trial court's conclusion of law was that the encounter between appellant and officer Tice was a consensual encounter. After the consensual encounter, the trial court concluded that, based upon Tice's investigation of a possible DWI, Tice had reasonable suspicion to detain appellant.

Appellant now challenges the trial court's denial of the motion to suppress. For the reasons hereinafter stated, we disagree with appellant and will affirm the trial court's decision to deny the motion to suppress.

Standard of Review

We review a trial court's denial of a motion to suppress under a bifurcated standard of review. *Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013). We review the trial court's factual findings for an abuse of discretion but review the trial court's application of the law to the facts *de novo. Id.* In reviewing the trial court's decision, we do not engage in our own factual review; rather, the trial judge is the sole

3

trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *St. George v. State*, 237 S.W.3d 720, 725 (Tex. Crim. App. 2007). When the trial court makes explicit fact findings we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those fact findings. *See State v. Castleberry,* 332 S.W.3d 460, 466 (Tex. Crim. App. 2011); *State v. Priddy,* 321 S.W.3d 82, 86 (Tex. App.—Fort Worth 2010, pet. ref'd). Therefore, we give almost total deference to the trial court's rulings on (1) questions of historical fact, especially when based on an evaluation of credibility and demeanor, and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *See Ford v. State*, 158 S.W.3d 488, 493 (Tex. Crim. App. 2005). Appellate courts review *de novo* "application of law to facts" that do not depend upon credibility and demeanor. *Id.* If the trial court's decision is supported by the evidence and correct under any theory of law applicable to the case, it will be sustained. *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003) (en banc).

## Applicable Law

There are three distinct types of interactions between police and citizens: 1) consensual encounters, which require no objective justification; 2) investigatory detentions, which require reasonable suspicion; and 3) arrests, which require probable cause. *Castleberry,* 332 S.W.3d at 466. A consensual encounter does not implicate the Fourth Amendment because, unlike an investigative detention or an arrest, each of which is a seizure for purposes of the Fourth Amendment, a consensual encounter may be terminated by the citizen at any time. *Priddy,* 321 S.W.3d at 86. So long as the citizen is free to disregard the officer's questions and go about his or her business, the

4

encounter remains consensual and merits no further constitutional analysis. *Id.* The fact that the officer did not tell the citizen that the request for identification or information may be ignored does not negate the consensual nature of the encounter. *Castleberry,* 332 S.W.3d at 466.

The consensual nature of the encounter changes when an officer, through physical force or a showing of authority, has restrained a citizen's liberty. *Id.* This change in the encounter results in a seizure for Fourth Amendment purposes. *Id.* If the seizure takes the form of a detention, then there must be reasonable suspicion that the citizen is about to or has been engaged in criminal activity. *Id.* To determine if there has been a change in the nature of the encounter, a reviewing court must examine the totality of the circumstances surrounding the interaction between the officer and the citizen. *Id.* at 467. Whereas all of the circumstances must be evaluated and considered, the most important circumstance is the conduct of the officer. *Id.* In the final analysis, the question to be answered is "whether a reasonable person would have felt free to ignore the police officer's request or terminate the encounter." *Id.* The United States Supreme Court has pointed to circumstances which would indicate that the encounter is a seizure rather than a consensual encounter. *See United States v. Mendenhall,* 446 U.S. 544, 553, 100 S. Ct. 1870, 64 L. Ed. 2d 497 (1980). Those circumstances include the threatening presence of several officers, the officers display of a weapon, physical touching of the citizen by the officer, the officer's words or tone of voice indicating that compliance with the officer's requests might be compelled, flashing lights, or blocking of a suspect's vehicle. *See id.* at 554.

Analysis

The record before this Court includes specific written findings of fact. Those findings, as applicable to our discussion, are as follows:

3. Tice was dispatched shortly before midnight to investigate a shooting incident. Dispatch informed Tice that the vehicle involved was a red Ford Mustang.

4. At approximately 1:10 A.M., Tice noticed a red Ford Mustang in a McDonald's parking lot.

5. Tice pulled into the parking lot and approached the vehicle. He determined that the sole occupant did not match the description of the suspects. Tice knocked on the window to speak to [appellant]. [Appellant] rolled down his window and began speaking to Tice.

These findings of fact find support in the record before us. Additionally, the record reflects that, when Tice approached appellant's vehicle, he did not have his weapon drawn, there were no other officers at the scene, Tice's flashing emergency lights were not illuminated on his patrol car, the spotlight was not illuminated or shining into the passenger compartment of appellant's vehicle, and Tice did not park his patrol car in such a manner as to block appellant's vehicle.

Appellant appeals contending that his interaction with Tice was the result of an investigative detention and there was nothing consensual about it. Appellant attempts to conflate the argument by positing that, under the facts of this case, we have an investigative detention that the State claims morphed into a consensual encounter. By taking this approach, appellant attempts to limit the nature of the interaction between Tice and himself.

However, the record belies this contention. The record demonstrates that Tice did turn into the parking lot with the idea of taking a closer look at a vehicle that matched the description of a vehicle he had received a radio report about. However, before Tice ever made contact with appellant, Tice had discounted the notion that appellant's red Ford Mustang was involved in the shooting incident because appellant could not have been one of the suspects. It is also important to remember that the trial court's finding of fact stated that Tice had discounted appellant as being involved in the shooting incident prior to making contact with him.

This then leaves this Court to determine whether the actual encounter with Tice was consensual in nature or was a detention and, therefore, a seizure for Fourth Amendment purposes. *See Castleberry,* 332 S.W.3d at 466. Our determination will be based on the totality of the circumstances. *See id.* at 467.

Our review of the facts shows no use of physical force and only a minimal amount of a show of authority that would make a citizen think that their liberty was being restrained. *See id.* at 466. The minimal amount of authority consists of Tice being in uniform and driving a marked patrol unit. Appellant points to the fact that Tice walked up with his flashlight in his hand and tapped on the window to get the window lowered as demonstrative of a show of authority designed to make appellant feel as if he had to comply with Tice's commands. This type of analysis ignores the stricture that we make our determination on the basis of the totality of the circumstances. *Id.* at 467. Further, appellant contends that he felt as if he had to comply with Tice's request. However, the subjective belief of appellant is not determinative as this is an objective based-test, as stated above, on the totality of the circumstances. *See State v. Garcia-Cantu,* 253

7

S.W.3d 236, 243 (Tex. Crim. App. 2008). For us to determine that a uniform and a marked patrol car are a sufficient show of authority to turn this encounter into a detention would be to negate the concept of consensual encounter with a uniformed officer. We cannot take that approach. Based upon the review of the total record, we conclude that Tice's encounter with appellant was of a consensual nature and that there were no Fourth Amendment implications. The trial court's ruling is supported by the record and appellant's issue to the contrary is overruled.

## Conclusion

Having overruled appellant's sole issue, the judgment of the trial court is affirmed.

Mackey K. Hancock
Justice

Do not publish.