**AFFIRMED; Opinion Filed June 10, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-14-00634-CR

### SOLOMON HAILU SOLOMON, Appellant
### V.
### THE STATE OF TEXAS, Appellee

**On Appeal from the County Court at Law No. 1
Collin County, Texas
Trial Court Cause No. 001-85920-2013**

# MEMORANDUM OPINION

Before Justices Brown, Stoddart, and Schenck
Opinion by Justice Stoddart

A jury convicted Solomon Hailu Solomon of possession of marijuana in an amount less than two ounces. In two issues, Solomon argues the trial court erred by denying his motion to suppress evidence and his constitutional rights were violated when the State misstated its burden of proof and made improper jury arguments. We affirm the trial court's judgment.

### FACTUAL BACKGROUND

Before trial began, the trial court conducted a hearing on Solomon's motion to suppress.

#### A. Officer Shackleford's Testimony

Brad Shackleford, an officer with the Richardson Police Department, testified at the hearing. On July 28, 2013, at approximately 2:23 a.m., Shackleford was on patrol when he saw a car parked in a city park "that never has vehicles parked at it." He testified the vehicle, a gray

Forenza, was parked at a trailhead "and usually people are down there in [sic] that time of morning doing things that are illegal."

Shackleford pulled into the parking lot near the Forenza, but he did not park his patrol car in a way that blocked the vehicle. He testified he "parked to the side of them. They could have backed out [of the parking lot] easily." When Shackleford pulled into the parking lot, he turned on the floodlight on his patrol car and approached the Forenza to make "consensual contact" with the people inside and make sure there were not any problems. Solomon was in the passenger seat of the car. Shackleford smelled marijuana coming from the car, and he also noticed marijuana on Solomon's shirt and pants.

After checking their identifications, he asked the driver and Solomon to get out of the vehicle. Shackleford asked Solomon about the marijuana on his clothes and "from that point forward he refused to speak to me at all." Shackleford recovered marijuana and a pipe from the car. He then arrested Solomon.

Shackleford testified he never used his emergency lights and he did not tell Solomon or the driver they were not free to leave when he initially made contact with them.

**B.      DVD of Encounter**

At the motion to suppress hearing, the State admitted a DVD from the dashboard camera of Shackleford's patrol car. The DVD shows that Shackleford parked to the side of the Forenza and illuminated the vehicle with his spotlight. Shackleford approached the vehicle and requested identification from the occupants. He did not have his service weapon drawn. He appeared to take their identification back to the patrol car while Solomon and the driver waited inside the vehicle. Shackleford then returned to the Forenza and asked the driver to step out of the car. He asked the driver if she had marijuana in the car, and she said she did not. After some additional, unintelligible conversation with the driver, Shackleford told the driver: "you don't have to talk to

me." The driver then told Shackleford there was marijuana in the vehicle. After additional conversation, Shackleford told the driver to remain at the rear of the Forenza and asked Solomon to step out of the car, which Solomon did. Shackleford told Solomon he knew there was marijuana in the car, he could smell the marijuana, the marijuana was "all over [Solomon's] chest and all over your pants," and Solomon was not required to speak to Shackleford. After asking Solomon to stand at the back of the car, Shackleford searched the car.

The DVD shows Shackleford never turned on his red and blue lights. He only used the spotlight on his patrol car.

At the end of the hearing, the trial court denied Solomon's motion to suppress.

### LAW & ANALYSIS

In his first issue, Solomon argues the trial court erred by denying his motion to suppress because the marijuana was obtained "pursuant to a warrantless detention without reasonable suspicion." There are three distinct types of police-citizen interactions: (1) consensual encounters, (2) investigative detentions, and (3) arrests. *Johnson v. State*, 414 S.W.3d 184, 191 (Tex. Crim. App. 2013). While consensual police encounters do not implicate Fourth Amendment protections, detentions and arrests do. *Id.* Determining whether Shackleford's initial interaction with the car's occupants amounted to a consensual police-citizen encounter or a detention under the Fourth Amendment is an issue of law that we review de novo. *See id.* at 192.

When examining whether an interaction with police was a consensual encounter or a detention, we consider the totality of the circumstances of the encounter in the light most favorable to the trial judge's implicit or explicit factual findings. *State v. Garcia-Cantu*, 253 S.W.3d 236, 244 (Tex. Crim. App. 2008). No bright-line rule governs when a consensual encounter becomes a detention. *Wade v. State*, 422 S.W.3d 661, 667 (Tex. Crim. App. 2013).

However, when an officer, "by means of physical force or show of authority, has in some way restrained the liberty of a citizen," courts will conclude that a Fourth Amendment seizure has occurred. *Garcia-Cantu*, 253 S.W.3d at 242 (internal quotation omitted). When, based on the totality of the circumstances, the police conduct communicates to a reasonable person he is "not at liberty to ignore the police presence and go about his business," a seizure has occurred. *Id.*

A seizure does not occur merely because an officer approaches a parked car in a public place and knocks on the window. *See Merideth v. State*, 603 S.W.2d 872, 873 (Tex. Crim. App. [Panel Op.] 1980); *Stewart v. State*, 603 S.W.2d 861, 861–62 (Tex. Crim. App. 1980); *State v. Priddy*, 321 S.W.3d 82, 88 (Tex. App.—Fort Worth 2010, pet. ref'd); *State v. Bryant*, 161 S.W.3d 758, 760–62 (Tex. App.—Fort Worth 2005, no pet.); *Ashton v. State*, 931 S.W.2d 5, 6 (Tex. App.—Houston [1st Dist.] 1996, pet. ref'd). Likewise, the fact that the individual's vehicle was already parked or stopped when the officer arrives does not answer the question of whether the interaction between the officer and the individual constituted an encounter or a detention. *See Garcia–Cantu*, 253 S.W.3d at 245 n.43; *Garza v. State*, 771 S.W.2d 549, 556 (Tex. Crim. App. 1989); *Martin v. State*, 104 S.W.3d 298, 301 (Tex. App.—El Paso 2003, no pet.).

In his brief, Solomon states Shackleford's patrol car was parked "at a 70-80 degree angle with the rear passenger side of Appellant's vehicle. This partially blocked the only point of ingress and egress to the park." His brief also asserts Shackleford "pulled into this parking lot, parked his patrol vehicle in a manner which partially blocked Appellant's vehicle, illuminated Appellant with a high intensity spotlight, leaned on Appellant's vehicle with both arms placed inside the window, shined a flashlight on Appellant, and informed the occupants that they were committing a criminal offense by being in the parking lot." Based on these facts, Solomon

asserts he was not free to leave and he was subject to a police detention without reasonable suspicion to detain him. We disagree.

After reviewing the DVD from Shackleford's patrol car, we conclude there is no evidence that Shackleford parked his patrol car in a way that even partially blocked the vehicle Solomon was in. Shackleford's patrol car was parked at an angle with the rear passenger side of the Forenza, but it did not block the vehicle's ability to back out of the parking space or leave the parking lot. The DVD is consistent with Shackleford's testimony on this point.

Additionally, Shackleford did not display his weapon, he had no physical contact with Solomon, he did not issue any commands, and he did not use his flashing lights. Although the spotlight from his patrol car was bright, that fact alone is not sufficient to convert a consensual encounter into a detention. Reviewing the totality of the circumstances of Shackleford's initial interaction with the occupants of the car, we conclude the interaction was a consensual encounter and not a detention. Because Solomon had not been seized when Shackleford approached the Forenza, the trial court did not err by denying his motion to suppress. We overrule his first issue.

In his second issue, Solomon asserts the State violated his Fifth and Sixth Amendment rights by misstating the State's burden of proof and making improper jury arguments. Solomon complains about multiple statements made by the State, some during voir dire and others during closing argument, and argues those statements impact: (1) his due process right to jury determination of guilt; (2) his right to proof beyond a reasonable doubt; (3) his right to remain silent and not testify; and (4) his right to confront accusers. Solomon concedes his counsel did not timely object to the State's comments about which he now complains.

The State argues Solomon's second issue should be dismissed as multifarious. We agree. Solomon's second issue embraces more than one specific ground for alleged error. It attacks several different statements by the State, which, according to Solomon, infringed on several of

his privileges and Constitutional rights. Because Solomon argues more than one legal theory as in a single issue, his second point is multifarious. *See Davis v. State*, 329 S.W.3d 798, 803 (Tex. Crim. App. 2010). We conclude Solomon's second issue is inadequately briefed, and, as such, is waived. *See Edwards v. State*, No. 05-09-01496-CR, 2011 WL 3795696, at *6 (Tex. App.—Dallas Aug. 29, 2011, no pet.) (not designated for publication) (citing *Stults v. State*, 23 S.W.3d 198, 205 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd); *Colman v. State*, No. 05–04–00146, 2005 WL 3387712, at *2 (Tex. App.—Dallas Dec. 13, 2005, pet. ref'd); TEX. R. APP. P. 38.1(h)).

Even if we consider Solomon's second issue, we would conclude he failed to preserve it for review. Solomon concedes he did not raise timely objections to the statements that he complains about on appeal. *See* TEX. R. APP. P. 33.1(a) (to preserve complaint for appellate review, timely request, objection, or motion must be made and ruled on by trial court). However, Solomon contends, the errors are reviewable as fundamental errors that do not need to be preserved for review.

Fundamental error is error "calculated to injure the rights of the appellant to the extent that he has not had a fair and impartial trial." *Ross v. State*, 487 S.W.2d 744, 745 (Tex. Crim. App. 1972). Fundamental error is error that affects rights that are so fundamental to the judicial system that they are granted special protection and cannot be waived by inaction alone. *Blue v. State*, 41 S.W.3d 129, 131 (Tex. Crim. App. 2000).

The complaints Solomon makes on appeal do not rise "to such a level as to bear on the presumption of innocence or vitiate the impartiality of the jury." *See Jasper v. State*, 61 S.W.3d 413, 421 (Tex. Crim. App. 2001). They do not injure his rights to the extent he did not have a fair and impartial trial. We conclude the errors, if any, were not fundamental.

Because the alleged errors about which Solomon complains are not fundamental and Solomon failed to object to the alleged errors, he has preserved nothing for our review.

We overrule his second issue.

## CONCLUSION

We affirm the trial court's judgment.

                                    / Craig Stoddart/
                                    CRAIG STODDART
                                    JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)
140634F.U05



## Court of Appeals
## Fifth District of Texas at Dallas
## JUDGMENT

SOLOMON HAILU SOLOMON, Appellant

No. 05-14-00634-CR       V.

THE STATE OF TEXAS, Appellee

On Appeal from the County Court at Law
No. 1, Collin County, Texas
Trial Court Cause No. 001-85920-2013.
Opinion delivered by Justice Stoddart.
Justices Brown and Schenck participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.


Judgment entered this 10th day of June, 2015.